447 F.2d 596
 Paul David KINNEY, a minor child, by and through his natural
parents and next friends, William Kinney and
Pauline Kinney, and all other persons
similarly situated,
Plaintiffs-Appellants,
v.
Harlow F. LENON, in his capacity as Judge of the Circuit
Court of the State of Oregon for the County of
Multnomah, et al., Defendants-Appellees.
 No. 25522.
 United States Court of Appeals, Ninth Circuit.
 Aug. 13, 1971, Rehearing Denied Oct. 13, 1971.
 
 John H. Clough (argued), Joseph C. Morehead, Portland, Or., for plaintiffs-appellants.
 Elizabeth Preston, Deputy Dist. Atty., Multnomah County (argued), George A. Van Homisslea, Dist. Atty., Portland, Or., Lee Johnson, Or. Atty. Gen., Salem, Or., for defendants-appellees.
 Before BARNES, BROWNING and TRASK, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 The plaintiff, a juvenile, through his parents appeals from a judgment of the district court dismissing his class action which sought to convene a three-judge court, 28 U.S.C. 2281, for the purpose of declaring an Oregon Statute unconstitutional. The statute was Oregon Revised Statutes Section 419.583 which declared that provisions regarding bail in criminal cases should not be applicable to children. He also sought a writ of habeas corpus, 28 U.S.C. 2241, to obtain his release from the custody of juvenile authorities and invoked the provisions of: (1) 28 U.S.C. 1343 (jurisdiction of district courts over conspiracy actions brought under 42 U.S.C. 1985); (2) 42 U.S.C. 1983 (violation of civil rights); and (3) 28 U.S.C. 2201 (declaratory judgments). Into this potpourri he finally blends the claims for alleged violation of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and various similar Oregon constitutional provisions.
 
 
 2
 The incident giving rise to this complexity of claims began when this 17-year-old youth was charged on February 18, 1970, in the Juvenile Department of the Circuit Court of Multnomah County, Oregon, with having committed two acts of violence: extortion, and assault and battery. He was placed in the juvenile detention home. A motion for his release was denied by the Juvenile Referee on February 19, 1970, at a detention hearing. On February 20, while the state proceedings were pending, the complaint herein was filed in the United States District Court against the judge of the Circuit Court of Multnomah County before whom this case was to be heard, all Circuit Court judges similarly situated, and the juvenile authorities. A Motion to Dismiss challenged the complaint and on March 2 a hearing was held, but no testimony taken. The district court granted the Motion to Dismiss. The request to convene a statutory three-judge court was rejected because no substantial federal question was presented by the complaint. Other requests for interim relief including the application for a writ of habeas corpus, were also denied. This appeal was thereupon taken on March 5.
 
 
 3
 In the meantime, back at the county, the appellants' brief tells us that on April 3 the extortion charge which was the sole basis for appellant's detention was dismissed upon motion of the county attorney, and appellant was tried before the Circuit Court of the County on the charge of assault and battery, found guilty and placed on probation. Brief for appellants at 7. With respect to the failure to pursue the proceedings in the state courts, appellant asserts:
 
 
 4
 'Appellant's state court juvenile case does not lend itself to an appeal for many reasons, and, further, an appeal of that finding would in no way determine or correct this invidious deprivation of appellant's constitutional rights.' Id.
 
 DISMISSAL OF ACTION
 
 5
 Although the action of the trial court on the Motion to Dismiss appellants' complaint is somewhat unclear, the parties have both assumed for purposes of appeal that the court's action was an order of dismissal of the action without leave to amend. If leave to amend could be implied, which is doubtful, brief for Appellants, App. at A-6, the appellants chose to stand on their complaint.
 
 
 6
 The court made it clear that the application for a three-judge court was denied because the complaint did not present a substantial federal constitutional question. Habeas corpus relief was denied and the complaint was dismissed without further explanation. As to the latter action since the Motion to Dismiss was predicated upon Fed.R.Civ.P. 12(b)(6), the appellants would have been entitled to amend. Bonanno v. Thomas, 309 F.2d 320 (9th Cir.1962); Sidebotham v. Robison, 216 F.2d 816 (9th Cir.1954). In their brief they assert that an amended complaint was filed on the morning of the day of the district court hearing. The judge, however, in rendering his oral decision stated that 'your amended complaint isn't here.' Appellants made no response to the court's comment.
 
 
 7
 Appellants have not asserted the right to file an amended complaint as a ground for appeal and we do not further consider it.
 
 THE REFUSAL TO GRANT BAIL
 
 8
 The principal thrust of appellants' argument is to establish the right of this juvenile to be released on bail. The first reason advanced is that Ore.Rev.Stat. 419.583 (1969),[1] which specifically denies the right to bail to juveniles, is unconstitutional.
 
 
 9
 An injunction is sought restraining the enforcement of this statute against the defendant juvenile, and a three-judge court is requested for the purpose of making the declaration as required by 28 U.S.C. 2281.
 
 
 10
 The complaint sufficiently sets out the claimed constitutional inadequacies of the Oregon bail statute for juveniles. It is asserted that the statute is in violation of both the Constitution of the United States and the Constitution of the State of Oregon.[2]
 
 
 11
 The complaint also alleges, albeit in formal conclusory sentences, that there is no adequate remedy at law and that the plaintiffs will suffer immediate and irreparable harm.
 
 
 12
 The right to be admitted to bail is a vital part of the system of administration of justice in adult cases. The Constitution protects its citizens against excessive bail.[3]
 
 
 13
 The supreme Court has interpreted the Federal Rules of Criminal Procedure as providing that a person arrested for a noncapital offense 'shall' be admitted to bail, commenting that:
 
 
 14
 'This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction.' Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). The Bail Reform Act of 1966, 18 U.S.C. 3141-3152, liberalizes and makes more flexible the conditions upon which a person charged with crime in non-capital cases may be released prior to trial.
 
 
 15
 Appellants rely heavily on In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for support in their contention that the Oregon statute in question is unconstitutional. Yet, however sweeping the language of the Court there, it was careful to point out that it decided only the due process application to a particular set of facts. 387 U.S. at 13, 87 S.Ct. 1428.
 
 
 16
 It pointed out that the distinction in treatment between adults and minors accused of wrongdoing has been recognized in every state and that the constitutionality of Juvenile Court laws has been sustained in over forty jurisdictions against a variety of attacks. 387 U.S. at 14-15, 87 S.Ct. 1428. In pointing to the differences between juvenile and adult handling of wrongdoers, specific mention is made of bail.
 
 
 17
 'In addition to the specific problems involved in the present case, for example, it has been held that the juvenile is not entitled to bail, to indictment by grand jury, to a public trial or to trial by jury.' 387 U.S. at 14, 87 S.Ct. at 1436.
 
 
 18
 We note that under the Federal Juvenile Delinquency Act, bail for minors is made discretionary with the judge. 18 U.S.C. 5035.[5]
 
 
 19
 The precise question here has not been decided. Contrary to the district court view, we believe that the statute may present substantial constitutional questions. See also Trimble v. Stone, 187 F.Supp. 483, 485-86 (D.D.C.1960). It was upon the basis of lack of substantiality of the federal constitutional question that the trial judge denied the application for a three-judge court. We would concur with him on the decision but would base our judgment upon a different reason. As will appear hereafter, that reason is based upon decisions of the United States Supreme Court which were not available to the district court at the time of its decision.
 
 
 20
 As we have pointed out, appellants' complaint alleges the guaranties of the right to bail, to due process and to equal privileges and immunities existing in the Oregon Constitution as well as in that of the United States Constitution. At the date of the filing of these proceedings in the District Court of the United States, proceedings were being conducted in the state court. The District Court of Multnomah county had before it the undetermined charges against this child for extortion and for assault and battery. There was no allegation in the complaint that there was or had been or would be any harassment of this youth by the state courts or that he would not receive even-handed justice in the courts of the state. The complaint before the United States District Court was filed February 20 and heard March 2. The petition before the juvenile department of the state court was filed February 18 and tried April 3, and resulted in a finding of guilt of assault and battery with the extortion charges dismissed on motion of the district attorney. Appellants argue that the state court juvenile case 'Does not lend itself to an appeal for many reasons and, further, an appeal of that finding would in no way determine or correct this invidious deprivation of appellants' constitutional rights.' Brief for Appellants at 7.
 
 
 21
 That statement is not sufficient to show that the state courts are inadequate or unfair. Litigants and courts have oft been reminded of the long standing public policy to permit state courts to try state cases and state issues free from interference by federal courts by way of injunction proceedings. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[6]
 
 
 22
 These principles have been recently reaffirmed in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); and Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).
 
 
 23
 The plaintiffs in the above cases from a variety a factual situations all urge the convening of a three-judge court to directly enjoin a state court prosecution because the statute upon which the prosecution is bottomed, is unconstitutional; /7/ or urge the court to 'declare' the state statute unconstitutional and prevent its use against the petitioners;[8] or a combination of both.[9]
 
 
 24
 Similarly, the appellants in their complaint here describe their action in the opening paragraph as one seeking a declaratory judgment that Ore.Rev.Stat. 419.583 (1969) is unconstitutional and for a temporary restraining order, and a preliminary and permanent injunction against the continued enforcement of that provision through the medium of a three-judge court. C.T. 1. The pending state proceedings are described and the state officials are made parties defendant.
 
 
 25
 Appellants here are confronted immediately with 28 U.S.C. 2283, which provides:
 
 
 26
 'A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'
 
 
 27
 The statute reflects the public policy referred to before. Two of the reasons for that policy as emphasized by the Supreme Court are, first, the basic equity requirements for equitable relief which cannot be met,[10] and, second, the relationship between the state and the federal governments. Out of this 'Federalism' comes the mutual respect which results in the doctrine of comity. Younger v. Harris, supra, 401 U.S. at 44, 91 S.Ct. 746. Continues Mr. Justice Black for the Court:
 
 
 28
 'It is against the background of these principles that we must judge the propriety of an injunction under the circumstances of the present case. Here a proceeding was already pending in the state court, affording Harris an opportunity to raise his constitutional claims. There is no suggestion that this single prosecution against Harris is brought in bad faith or is only one of a series of repeated prosecutions to which he will be subjected. In other words, the injury that Harris faces is solely 'that incidental to every criminal proceeding brought lawfully and in good faith.' (Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943)) and therefore under the settled doctrine we have already described he is not entitled to equitable relief even if such statutes are unconstitutional. (Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941)).' 401 U.S. at 49, 91 S.Ct. at 753.
 
 
 29
 Likewise here, a proceeding was already pending in state court. The fact that it was a juvenile proceeding rather than a criminal prosecution of an adult should not be determinative; the interests of the state involved are at least of equal gravity. Although the injunction sought would not have terminated the entire proceeding, the interference would have been substantial. The juvenile court's jurisdiction attaches at the point the child is taken into custody. Ore.Rev.Stat. 419.573. The detention hearing at which the determination is made on whether to release the child pending a hearing on the merits is characterized by appellants themselves as a 'critical stage' in the juvenile proceeding. There are elaborate statutory provisions concerning the detention question, designed to properly address the delicate problem of dealing with juvenile offenders. E.g., Ore.Rev.Stat. 419.573, 419.575, 419.577. Any interference at this stage would clearly be at odds with the principles of comity and federalism which underlie Younger.
 
 
 30
 Appellants offer no substantial support for their conclusory allegation that they do not have an adequate remedy under state law and therefore without federal interference would suffer irreparable damage. There is no reason to believe the Oregon courts cannot and will not afford whatever protection is justified under both their own and the United States Constitution. So far as appears, appellants could have appealed the order of the state circuit court affirming the detention order. Ore.Rev.Stat. 419.561. If not, habeas corpus apparently would have been available. Ore.Rev.Stat. 34.310. Indeed, appellants instituted state habeas corpus proceedings but abandoned them because they thought the federal counterpart would be speedier.
 
 
 31
 We find the appellants here to be in the same position as was Harris in Younger v. Harris. For the same policy reasons, and without considering the scope of Section 2283, the application for a three-judge court and an injunction must be denied.
 
 DECLARATORY JUDGMENT
 
 32
 Appellants also ask for a declaratory judgment. The petitioners sought the same relief in Samuels v. Mackell, supra, and it was refused. We refuse it here. In Samuels, the Court reminds us that although declaratory relief has its genesis in a statute, it is still basically an equitable action and the same equitable principles control. Said the Court:
 
 
 33
 'We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well.' 401 U.S. at 73, 91 S.Ct. at 768.
 
 HABEAS CORPUS
 
 34
 Appellant asserts that he is properly before this court on his petitioner for a writ of habeas corpus despite the fact that he is no longer in custody. Upon appellants' own statement, the only charge which was the basis for his detention was the extortion charge. This was dismissed on April 3, on motion by the district attorney. Brief for Appellants at 7. He was on the same day found guilty of assault and battery and placed on formal probation on that conviction. No attack is made upon that finding of guilt.
 
 
 35
 Reliance is placed upon Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968), by appellant for his contention that appellants' case is not moot simply because he is not now in custody. We do not agree. The mootness doctrine of St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed.1199 (1943), itself recognized exceptions but we find none which would accommodate appellants' position. The reasons usually noted for rejection of the mootness contention are that even though the defendant is not in custody, further penalties or disabilities can be imposed as a result of the judgment. 319 U.S. at 43, 63 S.Ct. 910. Later cases have broadened the exceptions of St. Pierre. See, Sibron v. New York, supra, 392 U.S. at 54-55, 88 S.Ct. 1912. In all of the cases the discussion revolves around the need for further adjudication of the 'merits' of the conviction under which the petitioner for the writ was detained. Here, his only detention was under a charge which was dismissed by the prosecutor. The merits of the extortion charge were never reached. No question is raised as to the validity of the conviction for assault and battery and it is conceded he was not detained under that charge.
 
 
 36
 Appellants' real complaint was that he was not admitted to bail under a charge which was later dismissed. But he has been long since released from custody under that charge. No case has been found which holds that a defendant may continue to litigate the merits of the bail statute under habeas corpus proceedings after the substantive charge under which he was held has been dismissed by the prosecutor and the defendant is no longer in custody. We find no persuasive reason advenced for that viewpoint here.
 
 SECTION 1983 RELIEF (42 U.S.C. 1983)
 
 37
 Appellants have also sought relief under the provisions of the Civil Rights Act. 42 U.S.C. 1983. There was no prayer for damages and it is apparent that the defendants here as judicial officers and quasi-judicial officers would be immune from such a claim. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Morrison v. Walker, 404 F.2d 1046 (9th Cir. 1968); Serrano v. California, 361 F.2d 474 (9th Cir.1966).
 
 
 38
 42 U.S.C. 1983 also provides, however, that a cause of action properly stated thereunder affords redress to the suitor not only in an action at law but also to a 'suit in equity, or other proper proceeding for redress.' The assertion of a claim under this portion of the statute, however, still faces the enigma of 28 U.S.C. 2283, supra, providing that a court of the United States may not grant an injunction to stay proceedings in a State court, 'except as expressly authorized by Act of Congress * * *.'
 
 
 39
 The majority opinion of the Court in Younger v. Harris, supra, did not discuss the effect of Section 1983 on the anti-injunction statute or state whether or not that section constituted an express authorization by Act of Congress within Section 2283. That it was considered, however, clearly appears from the concurring opinion of Justices Stewart and Harlan, and from the opinion of Mr. Justice Douglas, dissenting. In attempting to make clear some of the parameters of the decision the two specially concurring Justices state:
 
 
 40
 'In basing its decisions on policy grounds, the Court does not reach any questions concerning the independent force of the federal anti-injunction statute, 28 U.S.C. 2283. Thus we do not decide whether the word 'injunction' in 2283 should be interpreted to include a declaratory judgment, or whether an injunction to stay proceedings in a state court is 'expressly authorized' by 1 of the Civil Rights Act of 1871, now 42 U.S.C. 1983.' 401 U.S. at 55, 91 S.Ct. at 757.
 
 
 41
 We find no difference between the policy grounds in Younger and the policy grounds in the present case.
 
 
 42
 Mr. Justice Douglas in his dissent would flatly hold that Section 1983 does constitute an exception to the anti-injunction statute and would permit federal intervention against enforcement of the particular state laws involved in Younger.[11]
 
 
 43
 On the similarity of facts between Younger v. Harris and its companion cases[12] and the case at bench we must hold that equitable relief under 42 U.S.C. 1983 is foreclosed by the same policy reasons of comity inherent in our government's federalism outlined there.
 
 
 44
 Nor does reliance on Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) afford appellants a precedent for relief. As the Court in Younger is careful to explain, Dombrowski permitted a cause of action to be stated against proposed enforcement of certain state criminal statutes only under the peculiar circumstances of that case. Those circumstances were found to exist in substantial allegations in the complaint that there had been extensive harassment of the plaintiffs, under color of state statutes with no expectation of securing valid convictions and with an overriding purpose of depriving plaintiffs of their constitutional rights. 380 U.S. at 482, 85 S.Ct. 1116. Here, there was a single enforcement of two state laws with a conviction under one which was not appealed. The federal intervention was sought and denied while those proceedings were pending. We do not look upon Dombrowski as controlling.
 
 CLASS ACTION
 
 45
 The complaint asserts the action on behalf of the individual plaintiffs 'and all others similarly situated.' They are further identified as all of those residents of Oregon who are, or have been, or may be affected by the operation of Ore.Rev.Stat. 419.583 (1969).
 
 
 46
 Having dismissed the action, the trial court did not find it necessary to pass on the class action claim. Since our conclusion is the same, we likewise, find it unnecessary to consider the class action claim.
 
 
 47
 Judgment affirmed.
 
 
 
 [1]
 'Provisions regarding bail in criminal cases shall not be applicable to children held or taken into custody as provided in ORS 419.472 to 419.587.'
 
 
 [2]
 The Oregon constitutional provisions as alleged parallel the same provisions of the United States Constitution except for the equal protection of the law provision
 
 
 [3]
 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' U.S. Const. amend. VIIL
 
 
 [4]
 It has been said that the Act creates a presumption in favor of releasability measured in strictness only by the need to impose conditions to assure appearance at trial. United States v. Leathers, 134 U.S.App.D.C. 38, 412 F.2d 169 (1969). It is unclear whether bail may be denied altogether should the court be convinced that there is no other assurance of appearance. Cf. Carlson v. Landon, 342 U.S. 524, 544, 72 S.Ct. 525, 96 L.Ed. 547 (1952)
 
 
 [5]
 See also, McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971)
 The matter is also treated in a recent Presidential Commission Report, which states:
 'In about one-fifth of the jurisdictions the right to bail is extended by statute to juveniles. In most jurisdictions a juvenile taken into custody by the police has no right to bail but it to be released to his parents or other suitable person unless no such individual can be found or the juvenile is believed to present a serious threat of immediate danger to himself or the community.' Task Force Report: Juvenile Delinquency and Youth Crime, President's Commission on Law Enforcement and Administration of Justice (1967) at 5.
 The same report does not recommend bail as the solution to the handling of juvenile matters, saying at page 36:
 'The institution of bail, whereby an arrested person is given an opportunity to buy his release, may be seriously questioned as a rational solution to the problems of pre-hearing custody, despite its ancient and constitutional lineage * * *. In any event, it is one of those attributes of the criminal process that it is wise for the juvenile court system to be free of. Release as of right plainly may interfere with the protection or care required in some cases, and availability of freedom should not turn on the ability of the child or his family to purchase it.'
 
 
 [6]
 See also, Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Williams v. Miller, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489 (1942); Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); Beal v. Missouri Pac. R.R., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941)
 
 
 [7]
 Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [8]
 Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971)
 
 
 [9]
 Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)
 
 
 [10]
 Inadequacy of legal remedy and irreparable injury, which is both great and immediate, are those requirements. Younger v. Harris, 401 U.S. 37, 46, 56, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [11]
 'I hold to the view that 1983 is included in the 'expressly authorized' exception to 2283. * * *' Younger v. Harris, 401 U.S. at 62, 91 S.Ct. at 762
 
 
 [12]
 Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Samuels v. Machell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)