**George Edward HENKEL, Appellee,**

v.

**The Honorable Winston L. BRADSHAW, Circuit Court Judge of the Fifth Judicial District of the State of Oregon, Appellant.**

No. 71–2361.

United States Court of Appeals,
Ninth Circuit.

Aug. 27, 1973.

Lee Johnson, Atty. Gen., John W. Osburn, Sol. Gen., Thomas H. Denney, Asst. Atty. Gen., Salem, Or., for appellant.

Charles J. Merten, of Marmaduke, Aschenbrenner, Merten & Saltveit, H. Jay Folberg, Portland, Or., for appellee.

Before CHAMBERS, ELY and WRIGHT, Circuit Judges.

ELY, Circuit Judge:

This action for injunctive and declaratory relief was initiated by Henkel pursuant to the Civil Rights Act, 42 U.S.C. § 1983.[1] The District Court denied injunctive relief but granted a declaratory judgment in Henkel's favor. We reverse.

In July, 1968 Henkel had been ordered by a state trial court to pay $150 per month as child support for his two minor children. On September 16, 1969, after a request by Oregon's district attorney,[2] the state court issued an order directing Henkel to appear and show cause why he should not be held in contempt for failing to comply with that court's order. Appellant Bradshaw was the judge before whom Henkel was cited to appear. Henkel appeared before the court and moved for appointment of counsel by the court because of his indigency. Although under Oregon law[3] fa-

---

1. Jurisdiction in the District Court was appropriately grounded on 28 U.S.C. § 1343.

2. Under Or.Rev.Stat. § 23.785 (1971), the district attorney is authorized to institute such contempt proceedings.

3. Or.Rev.Stat. § 33.020 (1971) provides as follows:
   "*Limitation of punishment.* (1) Every court of justice and every judicial officer has power to punish contempt by fine or

imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in paragraphs (a) and (b) of subsection (1) of ORS 33.010, or in subsection (1) of ORS 1.240, it must appear that the right or remedy of a party to an action, suit or proceeding was

thers who are held in contempt for failure to support their minor children may be imprisoned for as long as six months and also fined, the judge refused to appoint an attorney. He did not consider the matter to be a criminal case.[4]

The show cause proceeding was continued while Henkel exhausted his pretrial state remedies.[5] The Oregon Supreme Court, however, denied Henkel's petition for writ of mandamus. The court reasoned that the issue of the right to court appointed counsel in the trial court should be raised on appeal of the case and not by the extraordinary writ of mandamus. State ex rel. Henkel v. Bradshaw, 257 Or. 55, 475 P.2d 75 (1970).

Henkel then brought this action in the District Court. The parties stipulated that Henkel was in fact indigent and unable to afford counsel. The District Court issued the requested declaratory judgment, holding that since Henkel was indigent and could be imprisoned if found in contempt, he was entitled to counsel as a matter of law.

■ Here, the appellant argues that a federal court, under the principles of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971) and its companion case, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), should abstain and allow the courts of the state of Oregon the first opportunity to decide the controversy. We agree with appellant's argument, although, at the same time, we share the

District Court's view that Henkel, absent the representation of counsel, could not be sentenced to jail in the contempt proceedings.

■ The Supreme Court in *Younger* reaffirmed the principle that federal courts should not interfere with state criminal proceedings unless absolutely necessary to protect constitutional rights. The Court, citing Fenner v. Boykin, 271 U.S. 240, 243, 46 S.Ct. 492, 70 L.Ed. 927 (1926), stressed that intervention is proper only in the extraordinary circumstance where there is threat of irreparable harm, "both great and immediate." 401 U.S. at 45, 91 S.Ct. 764. There is no such irreparable injury, however, if the threat can be eliminated in the defense of a single criminal prosecution. Additionally, before a federal court will intervene the plaintiff must make a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." 401 U.S. at 54, 91 S.Ct. at 755. This Circuit has applied these principles to actions based on the Civil Rights Act. Kinney v. Lenon, 447 F.2d 596 (9th Cir. 1971); Rivera v. Freeman, 469 F.2d 1159 (9th Cir. 1972).

While *Younger* dealt with the propriety of an injunction, *Samuels* held that the same principles of comity and equity apply to a declaratory judgment. Since the practical effect of both is usually identical, the same policies that would preclude an injunction would ordinarily argue against declaratory relief.[6]

---

defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100.

"(2) In addition to the punishment provided for in subsection (1) of this section, the court or judge shall have power to constrain performance of any lawful order, judgment or decree of such court or judge, by imprisonment of the person failing or refusing to comply, until the order, judgment or decree has been complied with."

4. The judge stated:
"I don't consider it a criminal case. I'm not going to appoint him an attorney. I realize he might end up in jail, but the Supreme Court is going to have to re-

verse me before I start appointing attorneys for these kind of cases."

5. The contempt proceeding is still pending and will not be set for a hearing on the merits until the resolution of this action.

6. As the Court noted in *Samuels*, there may be exceptional circumstances in which a declaratory judgment would be proper, even though injunctive relief would be inappropriate.

"There may be unusual circumstances in which an injunction might be withheld because, despite a plaintiff's strong claim for relief under the established standards, the injunctive remedy seemed particularly

Although *Younger* and *Samuels* were specifically concerned with intervention into state criminal prosecutions, the same basic notions of comity and federalism apply to actions such as this. *See* C. Wright, Law of Federal Courts § 52 (Supp.1972). Mr. Justice Stewart, in his concurring opinion in *Younger*, did suggest that different considerations might govern state civil proceedings. 401 U.S. at 55, 91 S.Ct. 746. While the state does not define the contempt proceeding here in question as "criminal", the label is not determinative. The state is a party to the contempt action,[7] and the district attorney initiated the proceeding in attempting to enforce a prior court order. Additionally, we are concerned with the possible penal outcome of the hearing. In this situation "the interests of the state involved are at least of equal gravity," *Kinney, supra,* 447 F.2d at 601, as in the usual state criminal proceeding. *Cf.* Palaio v. McAuliffe, 466 F.2d 1230 (5th Cir. 1972). Any federal interference at this stage of the state's show cause proceeding would be particularly intrusive to Oregon court procedure and "would clearly be at odds with the principles of comity and federalism which underlie *Younger." Kinney, supra,* 447 F.2d at 601.

Since Henkel has not shown the necessary prerequisite of irreparable harm, federal court intervention cannot now be justified. There are no allegations of bad faith or harassment; nor is there reason to believe that Oregon's courts will not correctly decide the issue when it is properly presented to them. Henkel asserts, however, that he will have the burden of going forward with the evidence in the contempt proceeding and that this procedure without benefit of counsel especially subjects him to later felony prosecution and to possible termination of his parental rights. He claims that the possible effect that the contempt proceeding may have upon any subsequent felony prosecution or termination hearing constitutes irreparable harm. We do not agree.

First, the record does not indicate that either a felony prosecution or a termination hearing has been threatened or is pending; thus, his asserted fear is mere speculation at this time. Sweeten v. Sneddon, 463 F.2d 713, 715 (10th Cir. 1972); *see* Boyle v. Landry, 401 U.S. 77, 81, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). Secondly, a declaratory judgment cannot eliminate the dangers in the further proceedings, since Henkel is not necessarily entitled to counsel in the show cause proceeding. *See Younger, supra,* 401 U.S. at 50, 91 S.Ct. 746. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) only prohibits the imprisonment of Henkel if he is not represented by counsel in the contempt hearing. *See* United States v. Sun Kung Kang, 468 F.2d 1368 (9th Cir. 1972). The state trial judge, now cognizant of *Argersinger,* will most assuredly know that if a lawyer is not appointed for Henkel's representation, Henkel cannot be confined even if found to have been contemptuous. And even if the judge should announce, in advance, that no confinement could attend the show cause proceeding, Henkel would yet be required to go forward *pro se* with his justification for nonpayment, risking, if he testifies, the same exposure to the risks of later felony prosecution and ter-

---

intrusive or offensive; in such a situation, a declaratory judgment might be appropriate and might not be contrary to the basic equitable doctrines governing the availability of relief."

401 U.S. at 73, 91 S.Ct. at 768.

We do not find such "unusual circumstances" in this case.

7. Or.Rev.Stat. § 33.060 (1971) provides:
  "*Parties plaintiff; prosecution by district attorney.* In the proceeding for a contempt, the state is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the district attorney, on behalf of the state, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a coplaintiff with the state."

**1390**

mination of parental rights. Finally, even if Henkel is found in contempt, he will be entitled to counsel both in any subsequent felony prosecution, *Argersinger,* and in any possible hearing to terminate his parental rights, State v. Jamison, 251 Or. 114, 444 P.2d 15' (1968). He may then specify any flaws in the contempt proceeding wherein he was unrepresented by counsel. Sweeten v. Sneddon, 463 F.2d 713 (10th Cir. 1972).

We conclude that Henkel's claim for right to counsel can be fully vindicated in one state proceeding, with the right of appeal through the state courts and with the right to petition the United States Supreme Court for review of any federal question. We do not agree with Henkel that· the situation is so identical to a flagrantly and patently unconstitutional statute as to warrant immediate federal intervention. *See Younger, supra,* 401 U.S. at 53–54, 91 S.Ct. 746. Although the trial judge did state that he would not appoint an attorney for an indigent in this type of proceeding, the Supreme Court has since decided *Argersinger.* That decision makes it clear that a jail sentence may not be imposed upon an indigent unrepresented by counsel, absent the indigent's knowing and intelligent waiver. The concurring opinion of the Chief Justice emphasizes that the state trial court, not the federal judiciary, has the initial responsibility of making these types of predictions:

> "Because no individual can be imprisoned unless he is represented by counsel, the trial judge and the prosecutor will have to engage in a predictive evaluation of each case to determine whether there is a significant likelihood that, if the defendant is convicted, the trial judge will sentence him to a jail term."

407 U.S. at 42, 92 S.Ct. at 2014.[8]

8. In cases where the state court does not contemplate incarceration, a possible and practical solution would be for the show cause order served upon the alleged contemnor to recite that imprisonment is not contemplated.

While sharing the District Court's concern with an indigent's right to counsel, we have concluded that its intervention in the Oregon contempt proceeding was premature.

The judgment is vacated, and, upon remand, the District Court will dismiss the action.

Reversed and remanded, with directions.