v.

The DISTRICT COURT In and For the COUNTY OF ARAPAHOE and the Honorable Richard L. Kaylor, One of the Judges Thereof, Respondents.

No. 80SA479.

Supreme Court of Colorado,
En Banc.

Feb. 9, 1981.

J. Gregory Walta, Colorado Public Defender, Shelley Gilman, Deputy State Public Defender, Littleton, for petitioner.

Robert R. Gallagher, Jr., Dist. Atty., Eighteenth Judicial District, Catherine P. Richardson, Deputy Dist. Atty., Littleton, for respondents.

DUBOFSKY, Justice.

In response to a petition filed under C.A.R. 21, we issued a Rule to Show Cause why the respondent district court should not set bond for the petitioner. We now discharge the Rule.

Petitioner L. O. W., a child [1], was charged in a delinquency petition in Arapahoe County District Court with acts which would have constituted second-degree burglary, a class three felony, section 18–4–203, C.R.S. 1973 (now in 1978 Repl.Vol. 8), if the child had been an adult. At a detention hearing on October 23, 1980, the district court heard testimony from the investigating police officer and reviewed both a counselor's report and the petitioner's court history. The evidence disclosed that the petitioner twice had been adjudicated a delinquent child and was the subject of a reserved ruling in another case. He had previously failed to appear for a jury trial and revocation hearing in Arapahoe County and had missed a court appearance in Jefferson County. At the time of the detention hearing L. O. W. was on probation for carrying a concealed weapon. Delinquency petitions based on serious charges were pending against him in Denver and Jefferson Counties. He was also subject to probation revocation proceedings based on the allegations in this case.

The district court found that probable cause existed to believe that the petitioner had committed an act of delinquency and that it was in the best interests of the child and the community [2] for him to remain in

---

1. The Colorado Children's Code (Children's Code) defines "child" as "a person under eighteen years of age." Section 19–1–103, C.R.S. 1973.

2. Subsections 19–2–103(3)(a)(I), C.R.S.1973 (1979 Supp.), and 19–2–103(3)(c), C.R.S.1973 provide:

19–2–103(3)(a)(I): "No child taken into custody pursuant to section 19–2–101(1)(a) ... shall be held in a detention or shelter facility longer than forty-eight hours, excluding Saturdays, Sundays, and court holidays unless ... the court determines that it would be contrary to the welfare of the child or of the community to release the child from detention. The juvenile court in each judicial dis-

detention[3] at the Arapahoe Youth Center. The trial court denied the petitioner's request that bond be set in a reasonable amount.[4]

Because no new evidence was adduced at subsequent detention hearings held on October 29 and November 3, 1980, the court continued the petitioner's detention.[5] The petitioner did not present evidence relevant to his request for bond at any of the hearings.[6]

The petitioner contends that the trial court's refusal to set bond contravenes *U.S. Const.*, Amend. VIII and *Colo.Const.*, Art. II, Sec. 20[7] prohibiting excessive bail, and sections 16–4–101, C.R.S.1973 (1979 Supp.),[8] 16–4–102, C.R.S.1973 (1978 Repl.Vol. 8),[9] and 19–2–103(7), C.R.S.1973 (1978 Repl.Vol.

8).[10] We conclude that a child does not have an absolute constitutional or statutory right to bail pending adjudication of the charges filed against him in juvenile court. Because the respondent district court's findings in this case justified detention of L. O. W. without bail we discharge the Rule.

### I.

■ We issued the Rule to Show Cause in this case on November 3, 1980, but, in order to avoid protracted juvenile court proceedings, we denied petitioner's request that the proceedings be stayed. On December 15, 1980, the petitioner appeared before the respondent court and admitted engaging in conduct which would have been aggravated motor vehicle theft if committed

---

trict shall make provisions so that either the judge or commissioner is available to set bond seven days a week."

19–2–103(3)(c): "When following a detention hearing . . ., the court orders further detention of a child, a petition alleging the child to be delinquent shall be filed with the court without unnecessary delay if one has not been previously filed, and the child shall be held in detention pending a hearing on the petition."

3. The Children's Code defines "detention" as the "temporary care of a child who requires secure custody in physically restricting facilities pending court disposition or an execution of a court order for placement or commitment." Section 19–1–103(11), C.R.S.1973.

4. The record of the detention hearing on October 23, 1980, includes the court's findings:

"... [T]he Court finds that the evidence is clear and convincing to this Court that the best interests of the child and the community would be served if the child was held in the Arapahoe County detention center without bond.

The Court finds from the evidence the child has been in possession of a deadly weapon; that he has committed offenses while on probation, that he is about to face another charge.

The Court finds from the foregoing that he is a danger to himself and he's a danger to others, and accordingly he's remanded to the detention center to be held without bond until further court proceedings."

5. Section 19–2–103(3)(b), C.R.S.1973, provides: "... No such child shall thereafter be released from detention except after a hearing, reasonable advance notice of which has been

given to the district attorney, alleging new circumstances concerning the further detention of the child. . . ."

6. C.R.J.P. 23 provides:

"(a) The court may, in its order admitting any child to bail, impose certain conditions, including who may post a bond for the child, with whom the child shall reside during the pendency of the proceedings, and any other *conditions necessary for the child's welfare or safety.*

(b) The court may order that any personal recognizance bond be secured by the personal obligation of the minor child and his parents, guardian, legal custodian, or other responsible adult."

See In re M., 3 Cal.3d 16, 473 P.2d 737, 89 Cal.Rptr. 33 (1970).

7. *See also* Article II, Section 19 of the Colorado Constitution.

8. Section 16–4–101 provides:

"All persons shall be bailable before conviction, except in a prosecution for a capital offense in which the proof is evident or the presumption great. . . ."

9. Section 16–4–102 provides:

"Any person who is in custody and for whom no bail has been set pursuant to the applicable rule of criminal procedure may advise any judge of a court of record in the county where he is being held of that fact with a request that bail be set. . . ."

See also Crim.P. 46.

10. Section 19–2–103(7) provides: "Nothing in this section shall be construed as denying a child the right to bail."

by an adult.[11] The court then detained the petitioner without bond until the dispositional hearing on January 5, 1981.

Since the decree of disposition has been entered the petitioner's appeal is technically moot. However, because the substantive issue is an important public question "capable of repetition yet evading review," *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* Colo., 620 P.2d 1051 (1980); *Rocky Mountain Association of Credit Management v. District Court,* 193 Colo. 344, 565 P.2d 1345 (1977), we elect to decide the substantive issue raised by the petition to establish a precedent for future action by the state's trial courts. *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission, supra; In re M., supra; State v. Gleason,* 404 A.2d 573 (Me.1979); *People ex rel. Wayburn v. Schupf,* 47 App.Div.2d 79, 365 N.Y. S.2d 235 (1975).

## II.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required . . . ." Beginning with the Judiciary Act of 1789,[12] federal law [13] has provided that, in all but capital cases, a person accused of a crime has an absolute right to be admitted to bail. The United States Supreme Court has interpreted the Eighth Amendment to require that bail be set because the

"... traditional right to freedom before conviction permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction.... Unless this right to bail is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."

*Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3, 6 (1951); Foote, *The Coming Constitutional Crisis in Bail I,* 113 U.Pa.L.

Rev. 969 (1965); Foote, *The Coming Constitutional Crisis in Bail II,* 113 U.Pa.L.Rev. 1125 (1965).

Section 20 of Article II of the Colorado Constitution is identical to the Eighth Amendment. In addition, Section 19 of Article II of the Colorado Constitution provides that:

"All persons shall be bailable by sufficient sureties except for capital offenses, when the proof is evident or the presumption great."

We have interpreted Section 19 to confer an absolute right to bail in all except capital cases. *Gladney v. District Court,* 188 Colo. 365, 535 P.2d 190 (1975); *Shanks v. District Court,* 153 Colo. 332, 385 P.2d 990 (1963). The purpose of bail is to ensure the defendant's presence at trial and not to punish him before he has been convicted. *Lucero v. District Court,* 188 Colo. 67, 532 P.2d 955 (1975).

Rights provided to adult defendants in criminal proceedings, however, have not been made uniformly available to juveniles because the protective purposes of juvenile proceedings preponderate over their punitive function. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *P. V. v. District Court,* Colo., 609 P.2d 110 (1980); *People v. L. A., Jr.,* Colo., 609 P.2d 116 (1980). Although early decisions held that "the juvenile is not entitled to bail, to indictment by grand jury, to a public trial or to trial by jury," *In re Gault, supra,* 387 U.S. at 14, 87 S.Ct. at 1436, the "applicable due process standard in juvenile proceedings, as [since] developed by *Gault* and *[In re] Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)], is fundamental fairness." *McKeiver v. Pennsylvania, supra,* 403 U.S. at 543, 91 S.Ct. at 1985, 29 L.Ed.2d at 659.[14]

---

11. The delinquency petition filed with the court after October 23, 1980, charged the petitioner with acts which, had they been committed by an adult, would constitute second-degree burglary of a dwelling, aggravated motor vehicle theft, and theft.

12. 1 Stat. 73, 91 (1789).

13. The Bail Reform Act of 1966, 18 U.S.C. §§ 3141–3152; Fed.R.Crim.P. 46.

14. The United States Supreme Court has declined to consider whether juveniles have a constitutional right to bail. *In re Whittington,* 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625 (1968).

Applying this standard, the United States Supreme Court has held that a hearing is required before a juvenile court may waive jurisdiction of a minor and transfer him to criminal court, *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); that the right of written notice, the right to counsel, the privilege against self-incrimination, and the right of confrontation and cross-examination of witnesses are available in juvenile delinquency adjudications, *In re Gault, supra;* that the criminal standard of proof beyond a reasonable doubt is applicable to delinquency adjudications, *In re Winship, supra;* and that double jeopardy protections apply to juvenile adjudicatory proceedings, *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1974). However, in *McKeiver v. Pennsylvania, supra,* the Supreme Court refused to extend the right to a jury trial to juvenile cases, finding that the benefits of a juvenile court's ability to function in a unique manner outweighed the fact-finding advantages of a jury trial.

The general thrust of these Supreme Court decisions has been to accommodate the goals and philosophies of the juvenile system within the due process framework of fundamental fairness. Hill, *The Constitutional Controversy of a Juvenile's Right to Bail in Juvenile Pre-Adjudication Proceedings,* 1 *Hastings Const.Law Q.* 215 (1974).

We have held that the fundamental fairness standard obligates trial courts to comply with statutory and constitutional speedy trial requirements in juvenile as well as adult proceedings, *P. V. v. District Court, supra;* that the standard of proof beyond a reasonable doubt which governs adult probation revocation proceedings also governs juvenile probation revocation proceedings, *People in the Interest of C. B.,* 196 Colo. 362, 585 P.2d 281 (1978); and that the rule

authorizing an adult defendant in a criminal proceeding to challenge for cause a prospective juror employed by a law enforcement agency is equally applicable to juvenile delinquency proceedings, *People in the Interest of R. A. D.,* 196 Colo. 430, 586 P.2d 46 (1978).[15] However, Sections 19 and 20 of Article II of the Colorado Constitution have not heretofore been applied to juvenile pre-adjudication proceedings.[16]

To determine whether a juvenile has a constitutional right to bail, we first must inquire whether consistently with fundamental fairness "'the juvenile court's assumed ability to function in a unique manner,' *McKeiver v. Pennsylvania, supra* 403 U.S. at 547, 91 S.Ct. at 1987," *Breed v. Jones, supra* 421 U.S. at 533, 95 S.Ct. at 1787, justifies withholding from juveniles the constitutional right to bail. We must weigh the adverse impact of bail on informal pre-adjudication juvenile proceedings against the benefits to be anticipated from a right to bail. Hill, *The Constitutional Controversy of a Juvenile's Right to Bail, supra.*

The use of bail in adult criminal proceedings has been criticized, *see* Foote, *The Coming Constitutional Crisis in Bail, supra,* particularly because it disadvantages indigent defendants. *See Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). *See also Godbold v. District Court,* Colo., 623 P.2d 862 (1981). Observing that "to superimpose a provision for bail in the Juvenile Court would cause unexplored difficulties for most juveniles, particularly those who are indigent," *In re M., supra* 473 P.2d at 744, n. 17, 89 Cal.Rptr. at 40, n. 17, the California Supreme Court declined to decide whether juveniles have a constitutional right to bail. Instead the

**15.** Since July 1, 1980, the Colorado Rules of Juvenile Procedure have provided that delinquency proceedings are to be conducted in accordance with the Colorado Rules of Criminal Procedure except as otherwise provided by statute or the Rules of Juvenile Procedure. C.R.J.P. 1. Crim.P. 46 does not apply to admis-

sion to bail in juvenile proceedings to the extent it is inconsistent with the Children's Code and C.R.J.P. 23, *see* note 6, *supra.*

**16.** The 16-year-old defendant in *People v. Lucero, supra,* was charged with aggravated robbery and first-degree murder as an adult.

court ruled that the state's juvenile court law, which does not require that bond be posted, establishes an adequate system for the pre-hearing release of juveniles. *Id.* Few children are financially independent and their parents may be unwilling or unable to post bail. At the same time, commercial surety may be unavailable because minors' contracts are voidable. *Doenges-Long Motors, Inc. v. Gillen,* 138 Colo. 31, 328 P.2d 1077 (1958).

If children are detained too frequently, a right to bail will not remedy the practice. Hill, *The Constitutional Controversy of a Juvenile's Right to Bail, supra;* 18 Vanderbilt L.Rev. 2096, 2107 n. 51. It is more likely that, were it recognized, a right to bail would become a substitute for other, more appropriate forms of release. Commentary to American Bar Association's *Juvenile Justice Standards Relating to Interim Status* (1980) at 66.

Virtually every court which has considered the issue has found that juvenile code safeguards obviate the need for a right to bail in juvenile pre-adjudication proceedings. *State v. Gleason, supra; Pauley v. Gross,* 1 Kan.App.2d 736, 574 P.2d 234 (1977); *People ex rel. Wayburn v. Schupf, supra; R. v. Whitmer,* 30 Utah 2d 206, 515 P.2d 617 (1973); *United States ex rel. Burton v. Coughlin,* 463 F.2d 530 (7th Cir. 1972); *Baker v. Smith,* 477 S.W.2d 149 (Ky. 1972); *Doe v. State,* 487 P.2d 47 (Alaska 1971); *Kinney v. Lenon,* 447 F.2d 596 (9th Cir. 1971); *In re M., supra; Baldwin v. Lewis,* 300 F.Supp. 1220 (E.D.Wis.1969), *rev'd on procedural grounds,* 442 F.2d 29 (7th Cir. 1971); *Estes v. Hopp,* 73 Wash.2d 263, 438 P.2d 205 (1968); *Fulwood v. Stone,* 394 F.2d 939 (D.C.Cir.1967); *but see Trimble v. Stone,* 187 F.Supp. 483 (D.D.C.1960). The American Bar Association's *Juvenile Justice Standards Relating to Interim Status, supra,* recommend that "the use of bail bonds in any form as an alternative interim status should be prohibited." Section 4.7 at 24.[17] *See also* President's Commission on

Law Enforcement and the Administration of Justice, *Task Force Report: Juvenile Delinquency and Youth Crime* at 36 (1967).

The United States Court of Appeals for the Ninth Circuit, refusing to overturn Oregon's statutory ban on bail for juveniles, noted that Oregon had enacted an elaborate statutory scheme governing pre-adjudication detention and called the statutory detention hearing a "critical stage" in the juvenile proceeding. *Kinney v. Lenon, supra* at 601. Unlike bail setting proceedings, informal detention hearings afford a judge an opportunity to consider the child's needs and welfare. Hill, *The Constitutional Controversy of a Juvenile's Right to Bail, supra.* In some instances, the court may consider substitute care for the child if the parent is unwilling to have the child return home or the child does not wish to remain at home pending an adjudication hearing. *Doe v. State, supra.*

■ Bail does not necessarily result in a juvenile's release from detention. When a juvenile's bail is not posted, the setting of bail alone does not effectuate the presumption of innocence, aid the child's preparation of a defense, or assure the child's presence at future court proceedings. The presumption of innocence and the child's participation in preparation of his defense may, however, be effectuated by curtailing the use of pre-adjudication detention. And while monetary bail may, in some cases, provide an additional assurance of appearance if a child's inadequate ties to the community or record of past failures to appear militate against a personal recognizance bond, it is within the trial court's discretion to set bond for a child in such cases.

■ If the policy expressed in section 19–2–103(3)(a)(I) of the Children's Code—disapproving the use of detention except in cases satisfying the demanding statutory standards—is implemented, the need for bail will be minimized in juvenile proceedings. We therefore hold that there is no unqualified constitutional right to bail for a

**17.** The Colorado "Standards of Juvenile Justice" (1974) make no reference to bail in juvenile proceedings.

juvenile under the United States and Colorado Constitutions.[18] However, a trial court may detain a juvenile without bail only after giving due weight to a presumption [19] that a juvenile should be released pending a dispositional hearing except in narrowly defined circumstances where the state establishes that detention is necessary to protect the child from imminent harm or to protect others in the community from serious bodily harm [20] which the child is likely to inflict. Davis, *Rights of Juveniles*, § 3.10 at 3–39 (1980).

The trial court in this case applied the Children's Code standards for detention:

> "... it would be contrary to the welfare of the child or of the community to release the child from detention."

*See* section 19–2–103(3)(a)(I).[21] These standards were first published in the "Standard Juvenile Court Act" in 1959 by the National Probation and Parole Association (predecessor of the National Council on Crime and Delinquency). The "Standard Juvenile Court Act" permitted detention if the child's "immediate welfare" or "the protection of the community requires that he be detained."

The standards for juvenile detention recommended recently by the American Bar Association are more precise:

> "3.1 Restraints on the freedom of accused juveniles pending trial and disposition are generally contrary to public policy. The preferred course in each case should be unconditional release.
>
> 3.2 The imposition of interim control or detention on an accused juvenile may be considered for the purposes of:
>
> A. Protecting the jurisdiction and process of the courts;

> B. Reducing the likelihood that the juvenile may inflict serious bodily harm on others during the interim period; or
>
> C. Protecting the accused juvenile from imminent bodily harm upon his or her request.
>
> 3.3 The interim control or detention should not be imposed on an accused juvenile:
>
> A. To punish, treat, or rehabilitate the juvenile;
>
> B. To allow parents to avoid their legal responsibilities;
>
> C. To satisfy demands by a victim, the police, or the community;
>
> D. To permit more convenient administrative access to the juvenile;
>
> E. To facilitate further interrogation or investigation; or
>
> F. Due to a lack of a more appropriate facility or status alternative.

> \* \* \* \* \* \*

> 4.2 The state should bear the burden at every stage of the proceedings of persuading the relevant decision maker with clear and convincing evidence that restraints on an accused juvenile's liberty are necessary, and that no less intrusive alternative will suffice.
>
> 4.3 Whenever a decision is made at any stage of the proceedings to adopt an interim measure other than unconditional release, the decision maker should concurrently state in writing or on the record the specificity of evidence relied upon for that conclusion, and the authorized purpose or purposes that justify that action."

---

**18.** The federal constitutional due process standard of fundamental fairness which balances the right to bail with the benefit "of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates," *McKeiver v. Pennsylvania, supra*, 403 U.S. at 550, 91 S.Ct. at 1988; *P. V. v. District Court, supra*, guides our determination that a juvenile does not have a right to bail under the Colorado Constitution.

**19.** *In re M., supra*, 473 P.2d at 748, 89 Cal.Rptr. at 44.

**20.** We do not equate "serious bodily harm" with "serious bodily injury" as defined in section 18–1–901(3)(p), C.R.S.1973.

**21.** "... The Children's Code contains very broad criteria for detention which are open to interpretation and are not adequately enforced." 1981 Juvenile Justice and Delinquency Prevention Plan, Colorado Department of Local Affairs, Division of Criminal Justice, August 31, 1980.

American Bar Association, *Juvenile Justice Standards Relating to Interim Status, supra* at 50.

 The transcript of the trial court's ruling includes specific findings that L. O. W. had avoided the jurisdiction and process of the court in the past[22] and had been in possession of a deadly weapon.[23] The court's findings and conclusions indicate that it gave due weight to the presumption that the petitioner should be released pending the dispositional hearing but found that there was a factual basis for detaining L. O. W. in order to protect others in the community from serious bodily harm which he was likely to inflict. *See Fulwood v. Stone, supra.* The trial court's findings here were sufficient to detain the child without bail.

### III.

One issue remains to be resolved. Colorado is one of a handful of states which by statute provide for bail in juvenile court proceedings. 18 *Vand.L.Rev., supra* at 2099. The statutory predecessors of section 19–2–103(7), C.R.S.1973 (1978 Repl.Vol. 8), of the Children's Code provided that any delinquent child "shall also have the right now given by law to any person to give bond or other security for its appearance at the trial of such case. . . ." L.03, page 181, § 6, R.S. 08, § 591; C.L. § 659; CSA C.33, § 58, C.R.S. '53, 22–8–6; C.R.S.1963, 22–8–6(3).[24] The same statutes provided that " no incarceration of the child proceeded against thereunder shall be made unless in the opinion of the judge of the court . . . it shall be necessary to insure his attendance in court at such time as shall be required. . . ."

In 1967, the General Assembly adopted the Children's Code. In section 22–2–2(2), C.R.S.1963, the Children's Code provided that "[t]he child shall then be released to the care of his parents or other responsible adult, unless his immediate welfare or the protection of the community requires that he be detained. . . ." The following section, 22–2–3(7), stated that "[n]othing in this section shall be construed as denying a child the right to bail." The 1973 recodification of the Colorado Revised Statutes consolidated the standards for detention and the bail provision in section 19–2–103. The standards for detention in section 19–2–103 were modified slightly by the General Assembly in 1978 and 1979, but the general detention standard, "contrary to the welfare of the child or of the community to release the child from detention," remained unchanged. Colo.Sess.Laws 1978, ch. 68, 19–2–103 at 364; Colo.Sess.Laws 1979, ch. 181, 19–2–103 at 761.

The detention criteria enumerated in section 19–2–103(3)(a)(I), C.R.S.1973 (1979 Supp.), and the statutory right to bail recodified in section 19–2–103(7), C.R.S.1973, appear to conflict. The trial court has discretion under subsection (3) to detain a juvenile, but under subsection (7), its discretion is subordinated to a juvenile's right to bail.

 Our resolution of this apparent conflict is based on section 2–4–206, C.R.S.1973, which provides that:

"If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date. . . ."

and section 2–4–208, C.R.S.1973, which provides that:

---

**22.** This, under our statute, is not alone sufficient for holding a child without bail. However, if a court does not have statutory grounds for detaining a child, but the child has avoided the jurisdiction and process of the court in the past, and the court concludes that there is a danger that the child will not appear for adjudication, the court may set bail to ensure the child's presence in court. See our opinion, *infra* at 1261.

**23.** While we were not furnished with the record upon which the court based its determination, the court specifically found that the evidence was "clear and convincing."

**24.** Prior to the adoption of special provisions for juvenile court proceedings, a juvenile was legally responsible for his criminal conduct and punished as an adult. Under these circumstances, the legislature afforded juveniles adult procedural safeguards including the right to bail. 18 *Vand.L.Rev., supra* at 2098.

"A statute which is re-enacted, revised, or amended is intended to be a continuation of the prior statute and not a new enactment, insofar as it is the same as the prior statute."

Subsection (7) is a continuation of a statute originally adopted in 1903; subsection (3) is a continuation of the Children's Code provisions originally adopted in 1967. Subsection (3) is the later in effective date. Under the rules of statutory construction, subsection (3) will prevail if the statutes are irreconcilable. However, because we have a duty to construe the subsections to avoid inconsistency when possible, *Alpert Corporation v. State Department of Highways*, Colo., 603 P.2d 944 (1979); *People v. James*, 178 Colo. 401, 497 P.2d 1256 (1972), we construe subsection (7)'s provision for bail to be supplementary to the district court's authority to detain juveniles under subsection (3).

 Our opinion here should not be construed to negate the availability of bail to juveniles in appropriate situations. For example, bail may be appropriate if a juvenile is subject to detention solely because of danger that he will not appear for adjudication.[25] In such situations bail should be considered as a viable, if not constitutionally mandated, alternative to detention. "Pre-Trial Detention of Juveniles," 6 *Am.J. Crim.Law* 137 (1978). We recognize that the option of setting monetary bail in a juvenile proceeding does not preclude a trial court from considering conditions of release which will be in the child's best interests. *See* C.R.J.P. 23, n. 6, *supra*.

The trial judge here did not have a statutory or constitutional mandate to grant bail pending the juvenile delinquency adjudication. The court's reasons for detaining the petitioner justify denial of bail.

Rule discharged.

---

**25.** If the parent supplies the money for bail, the parent is likely to take steps to ensure the child's presence in court.