James MASTIN, et al., Plaintiffs,

v.

William H. FELLERHOFF, et al., Defendants.

No. C-1-81-709.

United States District Court, S. D. Ohio, W. D.

Nov. 13, 1981.

Michael O'Hara, Legal Aid Society of Cincinnati, Cincinnati, Ohio, for plaintiffs.

James Harper, Asst. Pros. Atty., Cincinnati, Ohio, for defendants.

OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This case is before the Court on plaintiffs' motion for summary judgment (doc. 12), defendants' motion for summary judgment (doc. 13), and plaintiffs' memorandum in opposition to defendants' motion (doc. 14). Time has passed for any additional filings

under Local Rule 4.0.2, so the motions are ripe for judgment. For the reasons set forth below, we find that plaintiffs' motion is well taken and should be granted; defendants' motion should be denied.

This case was originally filed as a motion for preliminary injunction. On June 29, 1981, plaintiff James Mastin was found in contempt of an order of the Hamilton County Court of Common Pleas, Division of Domestic Relations (Domestic Relations Court) for non-payment of child support. Pursuant to that order, plaintiff was incarcerated for three days at the Community Correctional Institute (CCI). At the conclusion of the June 29 hearing, plaintiff was told to return to the Domestic Relations Court on August 17, 1981. Plaintiff was advised that he would be incarcerated for ten more days if he could not make support payments at that time.

Plaintiff was not represented by counsel at the June 29 hearing which resulted in his confinement to the CCI. Plaintiff advised the Domestic Relations Court he was unable to afford a lawyer and requested the Court to appoint one for him. This request was refused on the grounds that, because the proceeding was not "criminal," plaintiff had no right to appointed counsel. Because he was not able to afford counsel for the hearing scheduled August 17, 1981, plaintiff came to this Court requesting a preliminary injunction against the Domestic Relations Court, prohibiting it from incarcerating plaintiff or any other indigent person found in contempt of court for failure to pay support without first advising them of their right to have counsel appointed if they are unable to afford private counsel and without first appointing counsel to those indigent persons who request such assistance.

No final order was entered as a result of that hearing for preliminary injunction. Defendants agreed to stay proceedings against plaintiff Mastin and all others similarly situated until this case was decided on the merits. It was also agreed that this action would be decided upon motions for summary judgment. Such motions were filed, along with a joint stipulation of facts.

Because there is no genuine issue of material fact, a decision on the motions is proper. Plaintiffs' motion for summary judgment requests a declaratory judgment that the practice of the Domestic Relations Court of incarcerating indigent persons for contempt without appointing counsel to represent them violates Due Process of Law, and a permanent injunction prohibiting that Court from further engaging in that practice. Jurisdiction of this Court exists under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

In a separate Order, plaintiff's motion to certify this case as a class action was granted. The class of plaintiffs in this lawsuit consists of:

> All individuals who have been or will be summoned to appear in the Hamilton County Court of Common Pleas, Division of Domestic Relations to answer charges that they are in contempt of court by failing to pay child support, and who face incarceration by reason thereof, and who are unable to afford to retain counsel to represent them in such proceedings.

The question to be resolved is whether the practice of the Domestic Relations Court of holding contempt proceedings, and of incarcerating class members found in contempt without providing counsel violates their constitutional rights guaranteed under the Fourteenth Amendment to the United States Constitution.

### A. Abstention

Defendants argue that this Court should abstain from interfering with the procedures of the state courts under the principles articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* holds that, in the absence of extraordinary circumstances, federal courts may not intervene in state court proceedings if the plaintiff has the opportunity to raise his federal claim in the state proceeding. *Id.* at 41, 45, 91 S.Ct. at 749, 751. This principle was extended to preclude interference with state judicial processes, even though no injunction against a pending state proceeding was sought. *O'Shea v. Littleton*, 414 U.S. 488, 500, 94 S.Ct. 669, 678, 38

L.Ed.2d 674 (1973); *see also Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980). The fundamental principle is that the balance between the state and federal systems can be maintained only if the state courts are free to administer their own laws without federal interference.

■ The abstention doctrine, however, is not an invitation to state courts to avoid the mandate of the United States Constitution, and it only applies if the plaintiffs have an opportunity to fairly press their constitutional claims in the state court. *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977); *Younger, supra*, 401 U.S. at 45, 91 S.Ct. at 751, *citing Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926); *J. P., et al. v. DeSanti, et al.*, 653 F.2d 1080 (6th Cir. 1981). Lack of opportunity to fairly assert a constitutional claim in state court therefore would direct this Court to decide the issue rather than abstain. The question is whether plaintiffs have an opportunity to pursue this claim in the state court or whether the federal court is the only viable forum.

Plaintiffs argue that the Ohio Supreme Court decision of *In re Calhoun*, 47 Ohio St.2d 15, 350 N.E.2d 665 (1976) is dispositive and plaintiffs therefore have no remedy in state court. Ruling on defendant's habeas corpus petition, the Ohio Supreme Court in *Calhoun* held that the Sixth Amendment right to counsel as articulated by the United States Supreme Court in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), does not apply to a civil contempt hearing for non-payment of child support. 47 Ohio St.2d at 17, 350 N.E.2d 665. The Court found that *Argersinger* requires appointment of counsel in criminal prosecutions only; because contempt hearings are not criminal prosecutions, there is no right to counsel. *Id.*

Defendants argue that the Ohio Supreme Court has never ruled on the question whether an indigent defendant in a civil contempt hearing is entitled to appointed counsel under the Fourteenth Amendment, and that we must therefore abstain under *Younger* so as to give the state courts an opportunity to decide the merits of plaintiffs' constitutional claim. We recognize that *Calhoun* expressly relied on the Sixth Amendment only, but implicit in that holding is a rejection of any Fourteenth Amendment right to counsel under the same circumstances.

The Fourteenth Amendment to the United States Constitution sets forth the principle that no state shall deprive any person of life, liberty or property without due process of law and the equal protection of the laws. Through the Fourteenth Amendment, the fundamental safeguards of liberty found in the Bill of Rights have been found to be applicable to the states. In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court found that the Sixth Amendment right to counsel is a fundamental right essential to a fair trial and therefore binding on the states by way of the Fourteenth Amendment. *Id.* at 342, 83 S.Ct. at 795.

■ Clearly, it is the Fourteenth Amendment's right to due process that makes the appointment of counsel essential to a fair trial. We find that the Ohio Supreme Court, in deciding that there is no Sixth Amendment right to counsel in civil contempt hearings, also necessarily rejected the argument that appointed counsel is required by the Due Process Clause of the Fourteenth Amendment; it is only through the Fourteenth Amendment that the Sixth Amendment is binding on the states, and the Ohio Supreme Court would never have reached the Sixth Amendment issue without consideration of the Fourteenth Amendment. It would be unjust to require plaintiffs in this case to pursue a futile appeal through the state courts when the issue has already been ruled upon by the highest court in Ohio. Where plaintiffs have no adequate means of redress in the state courts, "extraordinary circumstances" envisioned by *Younger* exist and the federal courts need not abstain. *Parker v. Turner*, 626 F.2d at 10. We shall, therefore, proceed to decide this case on the merits.

## B. *Due Process*

■ The first question that must be addressed in deciding any due process claim is whether there is a protected interest at stake. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In this case, plaintiffs' essential right to physical liberty is threatened by the practice of the Domestic Relations Court and the Due Process Clause of the Fourteenth Amendment clearly applies. The more difficult question is what process is necessary to protect plaintiffs' fundamental rights.

In *Gideon v. Wainwright*, the Supreme Court held that representation by counsel is essential to protect the fundamental rights of life and liberty of an accused in a criminal prosecution, and that counsel must therefore be appointed if the defendant is indigent. 372 U.S. at 342–43, 83 S.Ct. at 795–96. In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1971), the Court found that the rationale of *Gideon* applies to any criminal prosecution, no matter how petty, whenever the defendant stands to be deprived of his liberty as a result of the proceeding. *Id.* at 32, 92 S.Ct. at 2010. The Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felonly, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012. The Court noted that imprisonment is never trivial to the person being deprived of his liberty and it is the result, not the nature of the particular offense, that requires appointment of counsel. *Id.* *See also In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966).

In *Lassiter v. Department of Social Services*, —— U.S. ——, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court focused on the relationship between a person's fundamental right to liberty and the Sixth and Fourteenth Amendment's right to counsel. The state had terminated petitioner's parental rights in *Lassiter* because of her lack of concern for her child's care and welfare. Petitioner argued that, because she was indigent, the Fourteenth Amendment required the state to appoint counsel to represent her at the termination hearing. The Supreme Court found there is a presumption "that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.*, 101 S.Ct. at 2159. Because petitioner was not threatened with loss of her physical liberty, the Court found that the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) must be considered and then weighed against the presumption articulated above to determine whether the Fourteenth Amendment requires the state to appoint counsel in parental termination hearings. *Id.*

*Mathews v. Eldridge* sets forth three factors to be considered in determining what due process requires in an individual case: the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. 424 U.S. at 335, 96 S.Ct. at 903. The *Lassiter* Court found that these factors balanced in favor of a right to appointed counsel, but did not overcome the presumption that a litigant is not entitled to appointed counsel unless threatened with loss of physical liberty. *Id.* at 2162. The Court therefore adopted the standard set forth in *Gagnon v. Scarpelli*, 411 U.S. 778, 787–88, 93 S.Ct. 1756, 1762–63, 36 L.Ed.2d 656 (1972), allowing for a case-by-case determination of a litigant's right to appointed counsel when the right cannot be deemed to be absolute. 101 S.Ct. at 2162.

■ Defendants urge us, under the authority of *Gagnon* and *Lassiter*, to adopt a case-by-case approach to appointment of counsel in civil contempt hearings. We do not, however, read *Lassiter* in the same way as defendants. Unlike the plaintiffs in the case before us today, petitioner in *Lassiter* was not threatened with loss of physical liberty so as to trigger a right to counsel under *Argersinger*. The *Lassiter* Court determined therefore that *Gagnon* permitted a case-by-case determination of the need for counsel in parental termination hearings. *Gagnon*, relying on *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 3

L.Ed.2d 484 (1972) found that a probationer has no absolute liberty interest, but only a conditional interest subject to the restrictions of his probation. 411 U.S. at 781–82, 93 S.Ct. at 1759–60. A probationer therefore is entitled to some due process as a probation revocation hearing, but due process does not require appointment of counsel in every case. *Id.* at 787, 93 S.Ct. at 1762. The *Gagnon* Court recognized that *Gideon* and *Argersinger* set down a *per se* rule requiring counsel in criminal prosecutions, but noted the "critical differences" between criminal trials which may result in loss of complete liberty, and probation revocation hearings that may result in loss of conditional liberty only. *Id.* at 788–89, 93 S.Ct. at 1762–63. This same distinction was articulated by the Court in *Lassiter* which noted that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." 101 S.Ct. at 2159, *citing Gagnon*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656.

Defendant's argument that the right to counsel at contempt hearings should be determined on a case-by-case basis therefore cannot prevail. It is clear to this Court that a state may not deprive a person of his physical liberty unless that person is represented by counsel, no matter what the nature of the proceeding. This principal is articulated by the Supreme Court in *Lassiter* which states:

> "That it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments' right to counsel in criminal cases, which triggers the right to appointed counsel is demonstrated by the Court's announcement in *In re Gault*, 387 U.S. 1, [87 S.Ct. 1428, 18 L.Ed.2d 527] (1966) that 'the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitments to an institution in which the juvenile's freedom is curtailed,*' the juvenile has a right to appointed counsel even though those proceedings may be styled 'civil' and not 'criminal.'" *Id.* at 2159, quoting *In re Gault*, 387 U.S. at 41, 87 S.Ct. at 1451. (Emphasis added by *Lassiter*.)

To characterize a proceeding as civil rather than criminal is a distinction without a difference if the end result is loss of physical liberty. Appointment of counsel is an absolute requirement of due process whenever the proceeding may result in imprisonment of that defendant. *See Lassiter, Argersinger, Gideon, supra.* We believe the balancing factors set forth in *Eldridge* apply only in cases where the right is not absolute, and the Court must determine whether there is a right to counsel under a particular set of facts. Even assuming, however, that the *Eldridge* factors are to be considered in determining whether plaintiffs have a right to counsel in this case, we find that plaintiffs' interests so far outweigh the interests of the state, and the risk that the procedures employed by the Domestic Relations Court will result in an erroneous decision is so great, that a right to appointed counsel clearly exists in all cases. The Honorable Timothy S. Hogan, United States Senior District Judge of this judicial district, came to the same conclusion in *Young v. Whitworth*, 522 F.Supp. 759 (1981), and we wholly concur with his resolution of that case.

That plaintiffs in this case stand to be deprived of their physical liberty is without dispute. The only question is whether the Fourteenth Amendment requires appointment of counsel in civil, as well as criminal proceedings, where the litigants are indigent and may be deprived of their physical liberty. The answer to this question must necessarily be yes and, although we have some reluctance to impose such a burden on the state system, the federal Constitution requires no less.

For the foregoing reasons, we find that plaintiffs' motion for summary judgment is well taken and should be granted and defendants' motion for summary judgment should be denied.

SO ORDERED.