David F. VELA, Colorado State Public Defender, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF ARAPAHOE, and the Honorable Charles A. Friedman, One of the Judges Thereof, Respondents.

No. 82SA444.

Supreme Court of Colorado, En Banc.

May 31, 1983.

Rehearing Denied June 20, 1983.

David F. Vela, Colorado State Public Defender, pro se.

Terri Brake, Deputy State Public Defender, Denver, for petitioner.

Charles A. Friedman, pro se.

Ray L. Weaver, Chief Deputy Dist. Atty., Littleton, for amicus curiae, Dist. Atty. of the Eighteenth Judicial Dist.

Robert T. Hinds, Timothy B. Walker, Littleton, for amicus curiae Colorado Trial Lawyers Ass'n.

ROVIRA, Justice.

In this original proceeding pursuant to C.A.R. 21, the Colorado State Public Defender (petitioner) seeks relief in the nature of mandamus and prohibition to require that the respondent court grant his motion to withdraw from the representation of a defendant in a contempt proceeding. We issued a rule to show cause, and we now make the rule absolute.

The petitioner was appointed by respondent to be counsel for Walter Harris, the defendant in a domestic relations case, against whom a contempt citation had been filed for failure to pay court-ordered child support. Harris requested the appointment of counsel, claiming that he was without funds to hire an attorney. Relying on *Padilla v. Padilla*, 645 P.2d 1327 (Colo.App. 1982),[1] the respondent, after finding Harris indigent, concluded that he was entitled to counsel at state expense because of the possibility of imprisonment if he were found in contempt of court.

---

1. In *Padilla v. Padilla,* the court of appeals held that a contempt proceeding, whether civil or criminal, where there was a possibility that imprisonment might result, should be treated as a criminal prosecution and an indigent defendant was constitutionally entitled to court-appointed counsel.

The petitioner objected to the appointment on the ground that there was no statutory authority for his appointment in such cases. Moreover, he presented evidence that the Public Defender's office was not equipped, either financially or in terms of expertise, to handle such civil matters.

We address in this case only the question of whether the petitioner may be appointed to represent indigent persons against whom contempt proceedings have been brought for failure to pay child support. We assume, for the purposes of this opinion, that the respondent judge was correct in holding that Harris was entitled to court-appointed counsel[2] but, nevertheless, conclude that he exceeded his authority in appointing the public defender to represent Harris.

Section 21-1-103(1), C.R.S.1973 (1978 Repl.Vol. 8), provides that the public defender is to defend indigent persons who are under arrest for or charged with committing a felony. Section 21-1-103(2), C.R.S.1973 (1982 Supp.), provides as follows:

"Except as provided in section 16-5-501, C.R.S.1973, the state public defender shall represent indigent persons charged in any court with crimes which constitute misdemeanors; juveniles upon whom a delinquency petition is filed or who are in any way restrained by court order, proc-

ess, or otherwise; persons held in any institution against their will by process or otherwise for the treatment of any disease or disorder or confined for the protection of the public; and such persons charged with municipal code violations as the state public defender in his discretion may determine, subject to review by the court . . . ."[3]

Respondent concedes that civil contempt is not a criminal proceeding, but argues that if one looks beyond form to substance the parallel between the punishment for a misdemeanor and punishment for contempt is "inescapable"—fine and imprisonment. Regardless of these parallels, however, the legislature did not include contempt proceedings in the statute, and it is not for us to include them merely because the policy of the statute might support their inclusion. The legislature did choose to include some proceedings that are technically civil—delinquency proceedings and proceedings involving persons held against their will in institutions. Applying the canon of statutory construction *expressio unius est exclusio alterius,* we conclude that the legislature did not intend the public defender to become involved in civil contempt proceedings arising from domestic relations matters.

Respondent also relies in part on previous cases in which the public defender has rep-

**2.** Most jurisdictions that have considered this question in recent years have found some right to counsel as a matter of due process. *But see In re Calhoun,* 47 Ohio St.2d 15, 350 N.E.2d 665 (1976) (counsel not required) and *Andrews v. Walton,* 428 So.2d 663 (Fla.1983) (no circumstance in which a parent is entitled to court-appointed counsel because if parent has the ability to pay, there is no indigency, and if parent is indigent, there is no threat of imprisonment). *Contra Mastin v. Fellerhoff,* 526 F.Supp. 969 (S.D.Ohio 1981) ("a state may not deprive a person of his physical liberty unless that person is represented by counsel, no matter what the nature of the proceeding."). Of those jurisdictions that have found some right to counsel, the jurisdictions are split on the question of whether to apply a *per se* rule or a case-by-case analysis. *Compare Tetro v. Tetro,* 86 Wash.2d 252, 544 P.2d 17 (1975); *Brotzman v. Brotzman,* 91 Wis.2d 335, 283 N.W.2d 600 (Wis. 1979); and *Mastin v. Fellerhoff, supra (per se* rule), *with Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976); *Duval v. Duval,* 114 N.H.

422, 322 A.2d 1 (N.H.1974); *State ex rel. Department of Human Services v. Rael,* 97 N.M. 640, 642 P.2d 1099 (N.M.1982); and *Jolly v. Wright,* 300 N.C. 83, 265 S.E.2d 135 (1980) (case-by-case analysis).

**3.** Section 16-5-501, C.R.S.1973 (1982 Supp.), provides:

"Except as otherwise provided, in any criminal prosecution for class 2 and class 3 misdemeanors, petty offenses, or municipal code violations, the prosecuting attorney may, at any time during the prosecution, state in writing whether or not he will seek incarceration as part of the penalty upon conviction of a crime for which the defendant has been charged. If the prosecuting attorney does not seek incarceration as part of such penalty, legal representation and supporting services need not thereafter be provided for the defendant at state expense, and no such defendant shall be incarcerated if found guilty of the charges against him . . . ."

resented a defendant in proceedings that are technically civil. For example, we held in *Mora v. District Court,* 177 Colo. 381, 494 P.2d 596 (1972), that indigents have a right to appointed counsel in habeas corpus proceedings contesting extradition. Similarly, in *Denbow v. District Court,* 652 P.2d 1065 (Colo.1982), we held that an indigent has a right to counsel in an appeal from a denial of a writ of habeas corpus in extradition proceedings. In both *Mora* and *Denbow,* the defendants were represented by the public defender.

Those two cases do not persuade us that the public defender should be appointed in this case. Habeas corpus proceedings, although technically civil, are a step in the criminal process. Moreover, they generally present issues of criminal law and procedure in which the public defender has expertise, which is not the case in civil contempt matters. We therefore conclude that there is no statutory authority for appointment of the public defender in civil contempt proceedings.

Respondent further contends that an agreement between the judicial department and the public defender requires the public defender to take cases such as this.[4] That agreement specifies that in return for the transfer of funds from the judicial department to the public defender's office the public defender will no longer decline to provide representation of persons listed in section 21–1–103 for reasons of "overload" or "unavailability." As noted previously, however, defendants in civil contempt proceedings are not included in section 21–1–103. There is nothing in the agreement to expand the class of persons eligible for representation by the public defender. Consequently, the agreement has no effect on the issues presented in this case.

The rule is made absolute.

4. The first agreement between the Judicial Department and the Colorado State Public Defender was dated July 1, 1980. Subsequent agreements were entered into for the fiscal years ending June 30, 1982, and 1983. Chief

Justice Directive 80–8, dated July 1, 1980, advised all judges and judicial department personnel of the agreement and the procedures necessary for its implementation.