

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-2003

# Anthony v. Council

Precedential or Non-Precedential: Precedential

Docket 01-2735

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Anthony v. Council" (2003). *2003 Decisions.* Paper 817.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/817

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

          Filed January 17, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2735

MICHAEL ANTHONY,
INDIVIDUALLY AND ON BEHALF OF
ALL PERSONS SIMILARLY SITUATED;
ANNE PASQUA; RAY TOLBERT

v.

GERALD COUNCIL, HON.; *LEE F. FORRESTER, HON.,
IN THEIR OFFICIAL CAPACITY AS A JUDGE OF THE
SUPERIOR COURT, AND ON BEHALF OF ALL SUPERIOR
COURT JUDGES OF THE STATE OF NEW JERSEY;
DEBORAH T. PORITZ, HON., IN HER OFFICIAL CAPACITY
AS CHIEF JUSTICE OF THE SUPREME COURT OF NEW
JERSEY, AND ON BEHALF OF ALL SUPERIOR COURT
JUDGES OF THE STATE OF NEW JERSEY;
RICHARD J. WILLIAMS, HON., IN HIS OFFICIAL
CAPACITY AS ADMINISTRATIVE DIRECTOR OF THE
COURTS OF THE STATE OF NEW JERSEY, AND ON
BEHALF OF ALL SUPERIOR COURT JUDGES OF THE
STATE OF NEW JERSEY

          Anne Pasqua, Ray Tolbert and
          Michael Anthony, individually and on
          behalf of all persons similarly situated,
          Appellants

*(Amended in accordance with Clerk's Order
dated 8/22/01)

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 00-cv-02418
(Honorable Garrett E. Brown, Jr.)

Argued April 23, 2002

Before: SCIRICA, RENDELL and NOONAN,*
Circuit Judges

(Filed: January 17, 2003)

          DAVID P. DAVIS, ESQUIRE
           (ARGUED)
          31 Jefferson Plaza
          Princeton, New Jersey 08540

           Attorney for Appellants

BARBARA J. STOOP, ESQUIRE
  (ARGUED)
Office of Attorney General of
 New Jersey
Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625

 Attorney for Appellees

OPINION OF THE COURT

SCIRICA, Circuit Judge:

This appeal arises out of a federal civil rights lawsuit brought by persons under state court orders for failing to support their children. Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. S 1983 contending the Due Process Clause establishes a right to counsel, and, if indigent, a right to appointed counsel. Defendants are New Jersey state court judges and the administrative director of the New Jersey courts.1 The District Court abstained under Younger v. Harris, 401 U.S. 37 (1971). We will affirm.

_____

*The Honorable John T. Noonan, Jr., United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

1. The District Court had jurisdiction under 28 U.S.C. SS 1331, 1343(a)(3). We have jurisdiction under 28 U.S.C.S 1291.

2

I

Plaintiffs, Michael Anthony, Anne Pasqua and Ray Tolbert, are all under child support orders issued by the Superior Court of New Jersey, Chancery Division, Family Part. Because they failed to meet their child support obligations, they were arrested and incarcerated for civil contempt of a court order.2

Plaintiffs allege violations of their due process rights under the Fourteenth Amendment.3 Specifically, they contend the presiding judges failed to inform them of their right to counsel and, if indigent, to appointed counsel, and moreover, the judges failed to appoint counsel for them. Plaintiffs contend they were indigent at the time of their hearings, continue to be indigent, and remain in arrears on their support obligations. As such, they aver there is a great likelihood they will again be deprived of their asserted rights because in the future they will be obligated to appear in similar contempt hearings.

_____

2. Anthony was arrested on April 19, 2000 and incarcerated. He appeared before defendant Superior Court Judge Gerald J. Council on May 11, 2000, and was released that same day after paying $125.00

toward his arrears. Pasqua was arrested on May 15, 2000, and appeared before defendant Superior Court Judge Lee F. Forrester on May 18, 2000. Pasqua was incarcerated until June 1, 2000, when she was released without having made any payment towards her arrearage. Tolbert was arrested on March 27, 2000, and held until April 13, 2000, when he appeared before Judge Council. Tolbert was incarcerated until June 7, 2000, when he was released "pursuant to[a] state appellate court order which is not related to this suit." Pasqua v. Council, No. 00-2418, at 3 (D.N.J. Mar. 9, 2001) (quotations omitted). On June 8, 2000, another hearing was held on Tolbert's arrearage and after being re-incarcerated, he was soon released and placed in a work/training program.

3. Plaintiffs' complaint also alleges defendants violated their rights under the Fifth Amendment of the United States Constitution and under Article I, paragraph 8 of the New Jersey Constitution. The District Court also examined plaintiffs' assertions under the Sixth Amendment of the United States Constitution. Pasqua, No. 00-2418, at 2 n.1. But in plaintiffs' appellate briefs, they do not mention these federal and state constitutional provisions. Because claims not raised in their briefs are waived, we will not consider these claims. See, e.g., Fed. Deposit Ins. Corp. v. Deglau, 207 F.3d 153, 169 (3d Cir. 2000).

3

Based on the alleged deprivations and their fear of future deprivations, plaintiffs sued certain New Jersey judges and the administrative director of the New Jersey courts under 42 U.S.C. S 1983. See 42 U.S.C. S 1983 (creating liability for individuals who, "under color of any statute, ordinance, regulation, custom, or usage" of a state, subject others "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"). According to plaintiffs, their constitutional deprivations occur under court rules and procedures promulgated and followed by defendants.

Plaintiffs seek the following declaratory and injunctive relief: a declaration that defendants' failure to inform them of their right to counsel and to appointed counsel, as well as defendants' failure to provide counsel, violated their constitutional rights; and an injunction preventing future incarceration without notification of right to counsel and to appointed counsel, and requiring appointed counsel whenever a hearing might result in a deprivation of liberty.

Plaintiffs also seek certification of a plaintiff class consisting of indigent New Jersey residents under child support orders who may appear in similar contempt hearings. The proposed defendant class would consist of all New Jersey Superior Court Judges. Finally, plaintiffs seek a preliminary injunction to immediately remedy the current alleged failures of the New Jersey court system. 4

The District Court did not reach the merits of the suit. After defendants filed a Motion to Dismiss in Lieu of Answer, the District Court abstained citing Younger v. Harris. Because it abstained, the District Court denied plaintiffs' motions for class certification and a preliminary

injunction. The plaintiffs appeal the decision to abstain and
the denial of their motions. Because this appeal comes to
us from a grant of a motion to dismiss under Fed. R. Civ.
P. 12(b)(6), "[w]e accept all factual allegations in the
complaints and all reasonable inferences to be drawn

_____

4. In addition, plaintiffs ask that defendants be required to review the
cases of all persons currently incarcerated in violation of the
constitutional rights asserted in this suit. Plaintiffs request attorneys'
fees and costs.

4

therefrom in the light most favorable to the plaintiffs. We
may affirm only if it is certain that no relief could be
granted under any set of facts which could be proven."
Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993).

II

Before turning to the merits of abstention, we address
standing. Defendants did not contest plaintiffs' standing
nor did the District Court address the issue. But we are
under an "independent obligation" to examine standing,
"even if the courts below have not passed on it, and even if
the parties fail to raise the issue before us." FW/PBS, Inc.
v. City of Dallas, 493 U.S. 215, 230-31 (1990) (citation
omitted). Upon review, we agree with the tacit
understanding of the parties and the District Court that
plaintiffs have standing in this matter.

As formulated by the Supreme Court, standing requires
the satisfaction of three elements:

> First, the plaintiff must have suffered an injury in fact
> --an invasion of a legally protected interest which is (a)
> concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical. Second,
> there must be a causal connection between the injury
> and the conduct complained of . . . . Third, it must be
> likely, as opposed to merely speculative, that the injury
> will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)
(quotations, citations and footnote omitted). Plaintiffs here
meet all three prongs of the standing test.

First, plaintiffs allege they have been injured because of
past constitutional deprivations and are likely to be injured
in future child support contempt hearings. Fears of future
injury are based on the likelihood that plaintiffs, who
allegedly remain indigent, will be summoned again before
the New Jersey courts for failing to meet their support
obligations. Plaintiffs contend they are unlikely to enjoy
their asserted rights in any future hearings. See Scalchi v.
Scalchi, 790 A.2d 943, 945 (N.J. Super. Ct. App. Div. 2002)
("The current law in New Jersey [does not] require that

counsel be assigned to an indigent in a support enforcement proceeding."); Prob. Servs. Div., Admin. Office of the Courts, Your Guide to Court Preparation: Answers to Common Questions About Child Support Enforcement Hearings (n.d.) ("A lawyer will not normally be court-appointed for this type of hearing . . . .").

Furthermore, there is a causal connection between the alleged deprivations of plaintiffs' constitutional rights and the complained-of conduct by the judges and administrator who promulgate and follow the current court practice. Finally, plaintiffs' injuries could be redressed by a favorable ruling of a federal court declaring the actions of the New Jersey courts unconstitutional and issuing the appropriate injunctions.

Our view on standing is in accord with most decisions rendered in similar suits. In challenges to current child support contempt hearings and to threatened future hearings, courts have explicitly held that plaintiffs have standing. E.g., Parker v. Turner, 626 F.2d 1, 5 n.11 (6th Cir. 1980) (finding standing for plaintiffs demanding right to appointed counsel and other due process rights in future child support hearings); Johnson v. Zurz, 596 F. Supp. 39, 42-43 (N.D. Ohio 1984) (finding standing for plaintiffs demanding right to appointed counsel in current and future child support hearings); Lake v. Speziale, 580 F. Supp. 1318, 1326-28 (D. Conn. 1984) (similar to Parker ). Other courts have assumed that plaintiffs have standing without directly addressing the issue. E.g., Henkel v. Bradshaw, 483 F.2d 1386 (9th Cir. 1973); Mastin v. Fellerhoff, 526 F. Supp. 969 (S.D. Ohio 1981).5

---

5. We are aware of only one similar case in which a court held a plaintiff did not have standing, but that case, Mann v. Hendrian, 871 F.2d 51 (7th Cir. 1989), is distinguishable. Mann focused on prospective relief for one individual to protect against alleged constitutional deprivations by a single judge. The Court of Appeals for the Seventh Circuit believed the plaintiff 's alleged future injury was too speculative because he failed to show he would likely appear before the judge in question in any future hearing. Id. at 53. Moreover, the court believed the relief sought was, in part, unnecessary because, at the time of his federal suit, Mann knew of his right to counsel at state contempt hearings and thus did not need an order forcing the state court judge to inform him of this right. Id. at 52-53.

This suit focuses on a cognizable past injury for which declaratory relief is sought. The suit also seeks to prevent future injury for all indigents, notably those unaware of the rights alleged here, who will appear in child support contempt hearings before any New Jersey Superior Court judge. Hence, the injury here is not conjectural or hypothetical nor is the efficacy of the sought remedy

speculative.

III

Turning to the merits, "[w]e exercise plenary review over the legal determinations of whether the requirements for Younger abstention have been met." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 843 (3d Cir. 1996). If the requirements have been met, "we review the district court's decision to abstain for abuse of discretion." Id.

In Younger, which involved a First Amendment-based challenge to California's Criminal Syndicalism Act, the Supreme Court held that, unless there were extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions. 401 U.S. 37. The ruling was based on traditional principles of equity and on considerations of comity. Id. at 43-44. Younger defined comity as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Id. at 44.6

Since Younger, the Supreme Court has extended the doctrine to bar federal interference in other types of state proceedings. Younger has been applied to civil enforcement

_____

6. In Samuels v. Mackell, a case decided on the same day as Younger, the Court held that "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal . . . courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." 401 U.S. 66, 73 (1971).

proceedings and to other civil proceedings "involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 368 (1989) (listing Court cases that have expanded the doctrine). Younger has also been applied to certain state administrative proceedings. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619 (1986); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982). The boundaries for the application of the doctrine remain somewhat elusive. But from its inception, it has been clear that Younger abstention only comes into play when an important state interest is implicated.

We have framed a test to determine when Younger abstention is appropriate. In order for a federal court to abstain under the Younger doctrine:

(1) there [must be] ongoing state proceedings that are

judicial in nature; (2) the state proceedings [must] implicate important state interests; and (3) the state proceedings [must] afford an adequate opportunity to raise federal claims. Even if the necessary three predicates exist, however, Younger abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.

Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (citing Middlesex County Ethics Comm., 457 U.S. at 432, 435).

All three predicates exist here. Moreover, there is no showing of bad faith, harassment or some other extraordinary circumstance, which might make abstention inappropriate. As such, we conclude the District Court was correct in abstaining in this suit.

A. Pending Proceeding

Ensuring the provision of child support is a function particular to the states. New Jersey law provides New

8

Jersey courts with the authority to order and direct the payment of child support. In part, the statute reads:

> Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order . . . as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . .

N.J. Stat. Ann. S 2A:34-23.

Each plaintiff here is under a child support order. Each order requires continual involvement by the New Jersey courts. Under New Jersey law, parents are obligated to provide support until a child is emancipated. Newburgh v. Arrigo, 443 A.2d 1031, 1037 (N.J. 1982).7 As such, plaintiffs have been, and will remain, under their child support orders for many years. Throughout the duration of the order, the New Jersey courts are charged with monitoring, enforcing and modifying the child support obligations. See N.J. Stat. Ann. S 2A:17-56.9a (providing for review and modification of child support orders); N.J.R. 5:7-5 (providing for monitoring and enforcement of child support orders, including the institution of contempt hearings if obligors fail to make payments); N.J.R. 5:25-3 (explaining the jurisdiction, duties, powers and responsibilities of Child Support Hearing Officers). As is

apparent, the New Jersey courts have performed their delegated functions with respect to plaintiffs' child support orders.

Plaintiffs contend that, because they are not currently appearing or scheduled to appear in any particular child

---

7. Emancipation can occur upon a variety of events taking place. The "[a]ttainment of age [eighteen] establishes prima facie, but not conclusive, proof of emancipation." Newburgh , 443 A.2d at 1037. As such, parents may be required to provide for a child who is older than eighteen, including contributing toward the costs of higher education. Id. at 1038-39; see also Gac v. Gac, 796 A.2d 951, 955-58 (N.J. Sup. Ct. App. Div. 2002) (explaining that a father may have to contribute toward the costs of his daughter's college education).

9

support hearing, including a contempt hearing, there is no "ongoing" or "pending" proceeding.8 This argument may carry weight in other types of suits. But given plaintiffs' specific claims here and the particular nature of child support orders, the argument is unavailing.9

In seeking declaratory and injunctive relief, plaintiffs focus retrospectively and prospectively. To the extent plaintiffs address past contempt proceedings, review is barred by Younger. Once a party has appeared in state court and has had "an opportunity to present [its] federal claims in the state proceedings," a federal court normally should refrain from hearing the claims. Juidice v. Vail, 430 U.S. 327, 337 (1977) (emphasis in original). The"party . . . must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in Younger." Huffman, 420 U.S. at 608.10 Plaintiffs here had ample opportunity to raise any constitutional claims at their state contempt hearings. They also could have appealed any adverse decision to higher courts. See infra Section III.C. Instead, they impermissibly attempted to bypass the state system and to seek relief in federal court.

Addressing prospective injunctive relief, plaintiffs' requested remedies will undeniably interfere with pending

---

8. The adjectives "ongoing" and "pending" are used interchangeably in the caselaw. References to "ongoing" or "pending" proceedings are meant "to distinguish state proceedings which have already commenced from those which are merely incipient or threatened." Huffman v. Pursue, Ltd., 420 U.S. 592, 607 (1975).

9. In contrast to child support orders, which endure for many years and require continual state court involvement, most criminal and civil actions are single, discrete matters, which have easily identifiable starting and endpoints. That state courts continually monitor, enforce and modify child support orders makes these particular procedures unique.

10. Similarly, the Rooker-Feldman doctrine restricts lower federal court review of state-court judgments and evaluation of constitutional claims that are "inextricably intertwined with the state court's [decision] in a judicial proceeding." D.C. Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983); see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Because here we affirm abstention under Younger, we do not address whether the Rooker-Feldman doctrine applies.

state proceedings. In New Jersey, child support orders and the mechanisms for monitoring, enforcing and modifying them comprise a unique system in continual operation. Each plaintiff here is party to an open case that will not terminate until the child support order is finally discharged. The New Jersey courts retain continuing, exclusive jurisdiction over these matters, whether the claims are intrastate or interstate, see N.J. Stat. Ann. S 2A:4-30.65 et seq., and the state courts constantly monitor plaintiffs' compliance with their orders. The New Jersey Probation Division, an arm of the state judiciary, is charged with oversight and reporting failures in meeting support obligations. N.J.R. 5:7-5. The Probation Division and the New Jersey courts are conferred with authority to ensure that payments are made and to remedy any failures to pay. Id.11 A New Jersey Superior Court judge may

---

11. The extent of the state courts' involvement in child support matters is exemplified in New Jersey Court Rule 5:7-5. The Rule is entitled:

> Failure to Pay; Enforcement by the Court or a Party; Income Withholding for Child Support; Suspension and Revocation of Licenses for Failure to Support Dependents; Execution of Assets for Child Support; Child Support Judgments and Post-Judgment Interest.

N.J.R. 5:7-5. As the title suggests, the Rule provides for various means by which the New Jersey courts, and the Probation Division in specific, can secure the payment of child support obligations.

Of particular note is the continual monitoring by the Probation Division, which may lead to the institution of contempt hearings if a failure to pay is not quickly remedied. In part, the Rule reads:

> (a) Contempt and Relief in Aid of Litigant's Rights. If a person fails to make payments or provide health insurance coverage as directed by an order or judgment, the Probation Division responsible for monitoring and enforcing compliance shall notify such person by mail that such failure may result in the institution of contempt proceedings. Upon the accumulation of a support arrearage equal to or in excess of the amount of support payable for 14 days or failure to provide health insurance coverage as ordered, the Probation Division shall file a verified statement setting forth the facts establishing disobedience of the order or judgment. The court . . . may then, in its discretion, institute contempt proceedings . . . and an aggrieved party, or the Probation Division on that party's behalf, may apply to the court for relief . . . .

N.J.R. 5:7-5.

"revise[ ] and alter" orders "from time to time as circumstances may require." N.J. Stat. Ann. S 2A:34-23. Any party, including plaintiffs here, at any time, may request modification of a support order. See N.J. Stat. Ann. S 2A:17-56.9a.

For purposes of Younger, such a comprehensive and fluid system designed to address the ever-present and ever-changing realities of child support orders must be viewed as a whole, rather than as individual, discrete hearings. Plaintiffs have acknowledged as much. Their request for prospective injunctive relief acknowledges that because of their indigency and continued arrearages, they will be subject to future ongoing contempt proceedings. Thus their request for federal court intervention to prevent alleged future constitutional violations constitutes impermissible interference with pending state proceedings.

This holding is in accord with Younger. As the Supreme Court has explained, part of the purpose of Younger abstention is to avoid "duplicative legal proceedings" and the "disruption of the state . . . justice system." Steffel v. Thompson, 415 U.S. 452, 462 (1974); see also Juidice, 430 U.S. at 336. Federal court ruling and relief here would address issues that plaintiffs can raise in their own cases currently pending in the New Jersey courts. Federal ruling and relief also would interfere with and disrupt the New Jersey court system, especially if the federal court must monitor and enforce the state courts' compliance with a federal order. See Parker, 626 F.2d at 8 (stating that a federal order requiring state courts to provide appointed counsel and other asserted due process rights would necessitate continual federal court monitoring of the state courts). Moreover, a federal court ruling could be "interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles," a suggestion the Younger doctrine seeks to avoid. Steffel, 415 U.S. at 462.

B. Important State Interest

New Jersey has an overriding interest in ordering, monitoring, enforcing and modifying child support obligations. Any ruling in this action would surely affect this interest. As such, the second predicate of our Younger test is satisfied.

Two Supreme Court cases in particular illuminate our analysis. In Juidice v. Vail, the Supreme Court concluded that abstention under Younger was appropriate with respect to pending contempt hearings. 430 U.S. at 328-30. According to the Court, a "State's interest in the contempt process, through which it vindicates the regular operation

of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. . . . [W]e think it is of sufficiently great import to require application of the principles" in Younger and its progeny. Id. at 335. After Juidice, the Court applied the Younger framework to determine whether abstention was appropriate when a corporation challenged the legality of certain post-judgment procedures in Texas. Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987). In Pennzoil, the Court recognized "the importance to the States of enforcing the orders and judgments of their courts." Id. at 13.

Juidice and Pennzoil underline a state's interest in the proper functioning of its court system, especially its procedures for enforcing court orders. This case implicates the operation of the New Jersey judicial system. Contempt hearings are an integral part of child support enforcement. As the Supreme Court has highlighted a state's interest in judicial administration generally, and in the coercive effect of contempt hearings specifically, we believe that New Jersey's interest here is of "sufficiently great import" to satisfy the second prong of the Younger test. Juidice, 430 U.S. at 335.

Other Supreme Court cases provide an alternative rationale to support our conclusion. Under the Younger doctrine, when a state seeks to vindicate its own policies as a party to a pending state proceeding, an important state interest often is implicated. Although Younger itself involved a criminal prosecution, the doctrine has been applied to restrict federal interference with state civil proceedings. See, e.g., Moore v. Sims, 442 U.S. 415 (1979) (state instituted a child abuse proceeding); Trainor v. Hernandez , 431 U.S. 434 (1977) (state sought to use prejudgment attachment procedures to collect money allegedly owed to it);  Huffman, 420 U.S. 592 (state sought to close down a movie theater

13

through a nuisance suit). Here, New Jersey may act as a party in state court proceedings to ensure that children under its jurisdiction receive proper support,12 thereby vindicating its own state policies.

C. Adequate Opportunity To Raise Federal Claims

Addressing the third predicate, "the burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [its] claims." Pennzoil, 481 U.S. at 14 (quotations omitted). Plaintiffs have offered no reason why their claims could not be fully heard by New Jersey courts. Moreover, defendants contend plaintiffs would encounter no difficulty adjudicating their claims in the New Jersey courts. Defendants' contentions are undisputed by plaintiffs and we find no reason to doubt them. Therefore we hold the third predicate of the Younger test is also satisfied.

Plaintiffs have the opportunity to raise their claims in any child support hearing and to appeal adverse decisions through the state appellate system and eventually to the United States Supreme Court, see 28 U.S.C.S 1257. Under New Jersey law, child support matters are heard in the Superior Court of New Jersey, Chancery Division, Family Part. See N.J.R. 5:1-1, 1983 explanatory note (The "Family Part of the Chancery Division [is] a co-equal unit of the Superior Court . . . [and is part of] a single integrated statewide trial court of general jurisdiction."); N.J.R. 5:1-2 (listing "actions . . . cognizable in the Family Part"). As a consequence, there is a continuing, open and available forum to raise any issues. Child support obligors are free to raise their issues at any time at any child support hearing or contempt hearing. Obligors can appeal, as of right, decisions of the Family Part to the Appellate Division. N.J.R. 2:2-3(a)(1) ("[A]ppeals may be taken to the Appellate Division as of right . . . from final judgments of the Superior Court trial divisions . . . ."); see also N.J.R. 5:1-1, 1983 explanatory note ("[A]ll rules . . . applicable to Superior

---

12. Acting as a party includes appearances by the Probation Division seeking enforcement of orders on behalf of aggrieved individuals. See N.J.R. 5:7-5 ("[A]n aggrieved party, or the Probation Division on that party's behalf, may apply to the court for relief . . . .").

14

Court actions continue applicable to actions cognizable in the Family Part unless otherwise provided . . . ."). Appeal to the New Jersey Supreme Court is available as of right or on certification depending on the specifics of the case. N.J.R. 2:2-1.

D. No Bad Faith, Harassment or Other Extraordinary Circumstance

Plaintiffs have not directly challenged the District Court's finding of no bad faith, harassment or other extraordinary circumstance, which might make abstention inappropriate. We have no reason to disturb the District Court's holding. See Middlesex County Ethics Comm., 457 U.S. at 437 (agreeing with district court's ruling when respondents did not challenge "the findings of the District Court that there was no bad faith or harassment . . . and no other extraordinary circumstances [were] presented to indicate that abstention would not be appropriate").

Plaintiffs cite one New Jersey decision from the Appellate Division, but it does not change our analysis. In Scalchi v. Scalchi, the New Jersey Superior Court, Appellate Division stated that "[t]he current law in New Jersey[does not] require that counsel be assigned to an indigent in a support enforcement proceeding." 790 A.2d 943, 945 (N.J. Super. Ct. App. Div. 2002). But this statement does not demonstrate that the New Jersey courts are resistant to adjudicating indigent parents' constitutional rights. We are confident that any constitutional challenge to state court

practice would receive proper consideration by the New
Jersey courts.13

_____

13. The New Jersey Supreme Court has suggested indigent defendants
should be afforded counsel "whenever the particular nature of the charge
is such that imprisonment in fact or other consequence of magnitude is
actually threatened or is a likelihood on conviction." Rodriguez v.
Rosenblatt, 277 A.2d 216, 223 (N.J. 1971). Moreover, after the New
Jersey Supreme Court decision, the United States Supreme Court
expressed a similar sentiment when it stated there is a "presumption
that an indigent litigant has a right to appointed counsel . . . when, if he
loses, he may be deprived of his physical liberty." Lassiter v. Dep't of Soc.
Servs. of Durham County, 452 U.S. 18, 26–27 (1981).

E. Similar Cases

In concluding that abstention is appropriate here, we are
in general accord with most decisions in similar suits. At
the same time, we recognize that, because of different fact
patterns and legal rationales, there is some variance in the
opinions. In Parker v. Turner, the Court of Appeals for the
Sixth Circuit held that abstention was appropriate when
plaintiffs sought certain due process rights, including right
to appointed counsel, in future child support hearings. 626
F.2d 1. In part, the Sixth Circuit reached its holding by
relying on the principles enunciated in O'Shea v. Littleton,
414 U.S. 488 (1974).14 Parker , 626 F.2d at 8 ("We find
O'Shea controlling. The relief which the plaintiffs seek in
this case would necessarily require monitoring of the
manner in which the state juvenile judges conducted
contempt hearings in non-support cases."). While we need
not rely on the rationale of O'Shea, we agree with Parker
that federal courts should avoid improper interference with
state proceedings. See 626 F.2d at 6, 8. In Henkel v.
Bradshaw, the Court of Appeals for the Ninth Circuit held
that abstention under Younger was appropriate when a
child support "contempt proceeding [was] still pending and
[would] not be set for a hearing on the merits until the
resolution of [the federal] action." 483 F.2d at 1388 n.5.
Also, in Johnson v. Zurz, 596 F. Supp. 39, and Mastin v.
Fellerhoff, 526 F. Supp. 969, federal trial courts suggested
that abstention might normally be appropriate when
plaintiffs sought due process rights in child support
hearings. Those courts, however, held that abstention was

_____

14. In O'Shea, plaintiffs sought to enjoin allegedly discriminatory state
court practices. The Supreme Court held that plaintiffs failed to allege an
actual case or controversy. 414 U.S. at 493. But even if the complaint
presented a case or controversy, the Court said it would conclude
plaintiffs failed to state "an adequate basis for equitable relief." Id. at
499. The Court suggested that any relief would impermissibly require
"unwarranted anticipatory interference in the state criminal process by
means of continuous or piecemeal interruptions of the state proceedings
by litigation in the federal courts." Id. at 500. Such interference would be
"nothing less than an ongoing federal audit of state criminal proceedings

which would indirectly accomplish the kind of interference that Younger . . . and related cases sought to prevent." Id.

16

inappropriate in the particular cases due to "extraordinary circumstances," which denied plaintiffs the ability to press their claims adequately in state court. Johnson , 596 F. Supp. at 44; Mastin, 526 F. Supp. at 971. 15

IV

Having decided to abstain under Younger, the District Court stated that "[s]ince plaintiffs' complaint will be dismissed, plaintiffs' requests for certification of plaintiff and defendant classes; and for a preliminary injunction must be denied." Pasqua, No. 00-2418, at 14. Because we agree that abstention is appropriate, we will affirm the denial of the motions.

V

Because all three predicates of the Younger test exist and because there is no bad faith, harassment or other extraordinary circumstance, which might make abstention inappropriate, we will affirm the District Court's judgment to abstain. We do not intend to minimize the importance of the rights asserted. But we believe this constitutional challenge should be raised in the New Jersey courts.

---

15. The Court of Appeals for the Fourth Circuit also held, in an unpublished opinion, that Younger abstention was appropriate when a party alleged in federal court that a child custody and support award issued in Virginia violated the First, Fifth, Thirteenth, and Fourteenth Amendments. See Etlin v. Robb, 458 U.S. 1112 (1982) (discussing Etlin v. Dalton, 673 F.2d 1309 (4th Cir. 1981), in dissent from denial of certiorari).

We are aware of only one case with which there is significant discord. In Lake v. Speziale, 580 F. Supp. 1318, the federal trial court held, after conducting a Younger test, that abstention was not appropriate when a plaintiff sought right to counsel and appointed counsel in future child support contempt hearings. This decision was based on the conclusion that there were no ongoing state proceedings at issue. Id. at 1331. But as noted, we believe that given the unique ongoing nature of child support orders and the particular mechanisms for monitoring, enforcing, and modifying these orders, plaintiffs' request for relief impermissibly asks the federal courts to interfere with pending state proceedings.

17

We will affirm the District Court's denial of plaintiffs' motions for class certification and a preliminary injunction.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

18